MERCHANT'S NATIONAL BANK of Eagle Grove, Iowa, Appellee, v. W. T. MURPHY, E. P. MURPHY, and E. G. DERR, as Guardian for B. F. DERR, Appellants.

Bills and notes: WAIVER OF SURETYSHIP. A surety may waive his rights as such and make himself a principal as between himself and the creditor.

Reformation of instruments: SUFFICIENCY OF PROOF.  More than a
mere preponderance of the evidence is required to reform a written
instrument; the proof must be clear and satisfactory.

Liability of surety: EXTENSION OF PAYMENT.  Where a surety on a
note consents to be bound as principal, an extension of payment,
no matter how long or how many times, will not relieve him from
liability in the absence of a specific provision limiting the extension
to a single instance.

*Appeal from Wright District Court.*— HON. W. D. EVANS,
Judge.

FRIDAY, NOVEMBER 18, 1904.

THE opinion states the case.—*Affirmed.*

*Wambach & Mattice* and *Ladd & Rogers,* for appellants.

*J. W. McGrath* and *C. M. Nagle,* for appellee.

WEAVER, J.— On July 29, 1898, the defendants E. P.
Murphy, W. T. Murphy, and B. F. Derr made and de-
livered to the plaintiff bank a promissory note for $1,000,
payable February 1, 1899.  So far as the form of the note
and the manner of its execution are concerned, there is noth-
ing to indicate that all were not principal debtors.  The
note contained a clause reading as follows:  " It is agreed
that the signers to this note, whether sureties in fact or not,
shall all be regarded as principals as between them and the
holder thereof."  This action was begun at law for a re-
covery upon said note March 3, 1902.  Since the making of
the note Derr has been adjudged of unsound mind, and ap-
pears and defends by guardian.  It was first pleaded that
Derr was a surety only, as the bank well knew; that the
clause above quoted was by mutual mistake left unerased in
the printed form on which the note was written; and a
reformation of the instrument was prayed.  Further plead-
ing, it was alleged that, without the consent of the surety,
the bank had from time to time, for a sufficient consider-

ation, extended the time of payment; that at the time of making the note the Murphys were solvent, but thereafter became insolvent, and the bank, well knowing of their impending failure, extended time of payment on this note to the injury of the surety. It is also alleged that the Murphys continued to do business with the bank, and thereafter had money deposited therein, which should have been appropriated by the bank to the payment of the note. Finally it is alleged that at the time of making the note Derr was of unsound mind and incompetent to enter into such a contract, but of this there is no evidence whatever, and we will not further consider it.

It is very manifest from this statement that, if the agreement which we have quoted is valid, and the appellant failed to make a case for the reformation of the instrument, then it is immaterial whether Derr was or was not a mere surety. It was a part of his agreement that, even if he was a surety as between himself and the principal debtors, he should, as to the bank, be subject to all the obligations which the law imposes upon principals. It is entirely competent for a surety to waive his rights as such, and make himself a principal as between himself and the creditor. *Menaugh v. Chandler*, 89 Ind. 94; *Sprigg v. Bank*, 35 U. S. Rep. 257 (9 L. Ed. 416); *Gridley v. Conner*, 4 La. Ann. 417; *Picot v. Signiago*, 22 Mo. 594; *Heath v. Bank*, 44 N. H. 180.

1. WAIVER OF SURETYSHIP.

The court below found that the alleged mistake was not established with such clearness and certainty as to justify a reformation of the note, and sustained a demurrer to the several defenses based on the theory of Derr's suretyship. If the first conclusion was right, then, in our judgment, it follows as a matter of course, that the ruling upon the demurrer must also be sustained. That Derr was in fact a surety, and that the bank knew it from the first, appears beyond doubt; but, unfortunately for the defense, the fact thus clearly estab-

2. REFORMATION OF INSTRUMENTS: sufficiency of proof.

lished is not in the least inconsistent with the execution of the contract contained in the note. The agreement was framed and inserted in the printed form for the evident purpose of relieving the bank from the risk of discharging a surety by its manner of dealing with the principal, and Mr. Derr must be presumed to have signed the note expecting the agreement to have its intended effect, unless we are able to say that the alleged mistake has been satisfactorily proven. It is a recognized rule that more than a mere preponderance of evidence is required to sustain a decree for the reformation of a written contract. The proof must be clear and satisfactory. *Chapman v. Dunwell,* 115 Iowa, 533. In the case before us we think this measure of proof is not furnished. The effect of the evidence shown in the record is no more than, as already suggested, to establish the fact that Mr. Derr was a surety, and the bank was aware of his true relation to the transaction; but there is not the slightest evidence that such surety did not intend to make the agreement embodied in the note. As a general rule every written contract is sustained by a strong presumption that he whose name is subscribed thereto executed it with knowledge of its contents, and with the intent to be bound by all of its provisions; and a court of equity must have something more than mere conjecture or vague and uncertain inference, before it will assume to change or strike out any of its provisions.

Counsel for appellant argue that, even if the note be not reformed, the defense may still rely upon the relation of suretyship, but we think this cannot be. Mr. Derr agreed 3. LIABILITY OF SURETY: extension of payment. that the bank might treat him as a principal debtor. With that relation existing, no extension of time of payment, no matter how long or how many times repeated, would release him from liability. It is said this ruling put Derr to great disadvantage, and exposed him to loss. But he could have interposed at any time and paid the debt, and enforced his claim, so far

as possible, against the principal debtors, if he had been so minded.   He knew, or is presumed to have known, that his note was outstanding all these years, and was content that it should run until the Murphys were prepared to take it up, or until he was called upon to pay it.

Counsel advance a theory that the general agreement of Derr to be treated as a principal is limited by another clause in the note, which says that the sureties consent to an extension of time of payment without notice, and that a single extension exhausted the right thus granted; but we think the agreement first mentioned cannot be thus neutralized and rendered mere meaningless surplusage, and the language must be held to mean just what it says.   While Mr. Derr was a surety as between him and the Murphys, he was, as to the bank, a principal, with no other or different or greater rights than he would have possessed, had the note been given for his own debt.

For the reasons stated, the judgment of the district court is *affirmed*.