Argued December 14, modified December 27, 1917, action of clerk allowing cost bill affirmed January 15, 1918.

# SCHOOL DISTRICT No. 30 *v.* ALAMEDA CONSTRUCTION CO.*

(169 Pac. 507, 788.)

**Schools and School Districts—Liability on Contractor's Bonds.**

1. Under Section 6266, L. O. L., as amended by Laws of 1913, page 59, providing that any person contracting with a school district, etc., for the construction of any buildings, etc., shall be required to execute the usual penal bond with the additional obligations that the

---

*On right of subcontractor, materialman or laborer to maintain action on contractor's bond to owner, see notes in 27 L. R. A. (N. S.) 573; L. R. A. 1915A, 768.

On applicability to public bodies of statute requiring building contractor's bond for protection of subcontractor, laborers, etc., see note in 50 L. R. A. (N. S.) 469.                    REPORTER.

contractor shall promptly make payments to all persons supplying labor or materials to the contractor for use in the prosecution of the work, the statute must be read as part of an undertaking made to fulfill the requirements of the law, and the effect of the undertaking is an express agreement by the surety to pay materialmen whose claims are not liquidated by the contractor.

### Schools and School Districts—Action on Contractor's Bond—Sham Denials.

2. In a suit on the bond of one contracting with a school district for the construction of a schoolhouse, where the surety's answer admitted the execution of the bond, but denied that it agreed to pay anyone except the school district, such denial was sham in effect, and left uncontroverted the allegation of the complaint that the surety obligated itself by such bond to pay persons furnishing labor or material in case the contractor failed to do so, in view of Section 6266, L. O. L., as amended by Laws of 1913, page 59, providing that the surety shall be liable to all persons supplying labor or materials.

[As to what are sham pleadings and the remedies against them, see note in 113 Am. St. Rep. 639.]

### Schools and School Districts—Liability on Contractor's Bonds.

3. Under Section 6266, L. O. L., as amended by Laws of 1913, page 59, the bond given by one contracting with a school district for the construction of a school building has a double obligatory aspect, and the surety's liability thereunder to laborers or materialmen is not affected by changes in the contract after its execution and delivery not attributable to such laborers or materialmen.

### Schools and School Districts—Contracts—Actions on Bonds—Variance.

4. Where, in an action on the bond of one contracting with a school district for the construction of a schoolhouse, the surety in its answer admitted that the contract was entered into and the bond given, and alleged that alterations were made after the execution of the contract without its knowledge, increasing its obligation, evidence was not admissible of such changes before the execution of the contract, but after it had signed the bond.

### Judgment—Necessity of Findings.

5. Under Section 570, L. O. L., providing that the only pleadings in a matter of disputed costs are the statement of the prevailing party and the objection of the opposite litigant, that the issue shall be heard by the court without a jury, and that as soon as convenient the court or judge shall make and file a correct itemized statement of the costs and disbursements as allowed and render judgment accordingly, and that no other finding or conclusion of law or fact shall be necessary, where the court made no statement of the amount of costs and disbursements properly taxable, but merely ordered that the cost bill filed by plaintiff be allowed and directed the clerk to tax the amounts thereof as plaintiff's costs, the judgment taxing costs being without any findings to support it, was void.

### Appeal and Error—Record—Bill of Exceptions—Necessity.

6. Where a judgment taxing costs was without findings to support it, the error was apparent on the face of the record and reviewable

without a bill of exceptions under Section 172, L. O. L., providing that no exception need be taken or allowed to any decision upon a matter of law when the same is entered in the journal or made wholly upon matters in writing and on file in the court.

### ON MOTION TO RETAX COSTS.

**Costs—On Appeal—Reversal as to Costs.**

7. Although the judgment for costs was reversed, appellant was not entitled to costs in the Supreme Court, where the principal judgment was affirmed; the procedure for taxation of costs provided by Sections 569, 570, and 581, L. O. L., although ancillary to the principal matter in dispute, being in practice entirely separate from the latter.

From Clatsop: James A. Eakin, Judge.

Department 1. Statement by Mr. Justice Burnett.

School District No. 30 contracted with the Alameda Construction Company for the erection of a school building. In connection therewith the Construction Company, with the Illinois Surety Company as surety, filed with the officers of the district a bond containing this recital:

"Whereas, the said principal, the Alameda Construction Company, a corporation, entered into a written contract with the said obligee (School District No. 30), dated June 10, 1915, for the construction and completion of a schoolhouse at Warrenton, Clatsop County, Oregon, in accordance with the terms, covenants and conditions of said contract which is hereby expressly referred to and made a part hereof;

"Now, therefore, the conditions of this obligation are such that, if the said principal shall faithfully perform each and every condition and covenant of said contract according to the terms, conditions and covenants thereof, and shall promptly make payments to all persons supplying it, said principal, or any subcontractor working under said principal, with labor or materials for any prosecution of the work provided for in said contract, then this obligation shall be null and void; otherwise, to remain in full force and effect."

This action is brought on the relation of the Hammond Lumber Company, which avers that it furnished to the contractor lumber of the reasonable value of $1,097.08 used by the latter in the construction of the building and for which the relator has not received any compensation. The case hinges upon the fifth allegation in the complaint which is as follows:

"That heretofore, and on the 10th day of June, 1915, pursuant to due and legal proceedings theretofore had and done by the plaintiff School District No. 30 of Clatsop County, Oregon, the said School District No. 30, entered into a written contract with said defendant Alameda Construction Co., wherein and whereby the said defendant Alameda Construction Company covenanted, contracted and agreed to furnish all of the labor and all of the material and construct and erect and complete for the said School District No. 30 of Clatsop County, Oregon, a schoolhouse in said School District No. 30, in accordance with the plans and specifications and detailed drawings then and there prepared and mutually agreed upon between them, and thereby agreed to complete said building in accordance with the plans and specifications and detailed drawings by the 10th day of October, 1915.

"That in order to insure the performance of said contract by the said Alameda Construction Co., and to secure the payment by said Alameda Construction Co. to all persons supplying such contractor labor or material for the prosecution of said work, and as a part of said contract, the said defendant Alameda Construction Co. and the said defendant Illinois Surety Company executed and delivered unto said School District No. 30 their certain bond obligatory in writing in the penal sum of $11,400, wherein and whereby the said defendant Illinois Surety Company covenanted, contracted and agreed that the said Alameda Construction Company would faithfully perform each and every condition and covenant of said contract according to the terms and conditions thereof, and would promptly make payments to all persons supplying it,

the said Alameda Construction Company, or any sub-contractor working under said Alameda Construction Company, labor or material for the prosecution of said work provided in said contract, and in case said Alameda Construction Co. failed so to do, then said defendant Illinois Surety Co. therein obligated itself to make such payments not exceeding said sum of $11,-400.00.

"That said bond obligatory was duly executed and witnessed, accordingly as provided by law, and accepted by said School District No. 30, and the same formed a part of said contract."

The answer denies another averment about furnishing the material, but its statement concerning the fifth allegation of the complaint above set forth is as follows:

"Admits the allegations contained in Paragraph V of plaintiffs' complaint, save and except that this defendant denies that it obligated itself under and by the terms of said bond that it would make payments to all or any persons supplying said Alameda Construction Company, or any subcontractor working under said Alameda Construction Company, for labor or material for the prosecution of said work provided in said contract, or agreed to make payments to any person save and except the obligee in said bond."

Further answering, the Surety Company declared in substance that after the agreement for the erection of the building was entered into between the district and the Construction Company and after the bond mentioned had been executed and delivered, the district without the knowledge or consent of the Surety Company made material changes in the contract which are specifically stated.

In an additional answer the Surety Company contends that it should be relieved from liability on the bond because in violation of the agreement in that re-

spect the School District made various payments to the contractor without requiring the presentation and filing receipts for labor and materials theretofore furnished for the building.

The reply traverses the new matter in the answer. A jury trial resulted in a judgment for the relator and the Surety Company appeals.                     MODIFIED.

For appellants there was a brief and an oral argument by *Mr. John H. Hall.*

For respondent there was a brief over the name of *Messrs. G. C. & A. C. Fulton,* with an oral argument by *Mr. George C. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The bond in question was given under the provisions of Chapter 27 of the Laws of 1913, p. 59, amending Section 6266, L. O. L., so as to read as follows in part:

"Hereafter any person or persons, firm or corporation, entering into a formal contract with the State of Oregon, or any municipality, county, or school district within said state, for the construction of any buildings, or the prosecution and completion of any work, or for repairs upon any building or work, shall be required before commencing such work, to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts."

1, 2. The same section provides that any person supplying labor or materials shall have a right of action and shall be authorized to bring suit in the name of the State of Oregon or any county, municipality or school

district within such state for his use and benefit against the contractor and his sureties and to prosecute the same to final judgment and execution. By these excerpts from the pleadings we are taught that the execution of the bond and contract as stated in the fifth allegation of the complaint are admitted. It is true the answer denies that the Surety Company agreed to pay anyone except the School District, but the statute above named must be read as part of the undertaking because the latter instrument was made to fulfill the requirements of that law. By the execution of the bond and its delivery, the Surety Company created a situation in which it would be compelled to pay materialmen for material furnished and not paid for by the contractor. In other words, the effect of this contract is an express agreement of the Surety Company to pay such claims not liquidated by the contractor and not only so, but to make payments directly to the materialmen. In this view of the case, the denial mentioned is sham in effect, so that averment No. V of the complaint stands uncontroverted, leaving the only contest to be waged over the matter of furnishing the material. It is true that the corporate character of the relator was denied on information and belief, but no notice seems to have been taken of that in the trial and no error is predicated concerning it.

3. The bond has a double obligatory aspect. As to the School District, it is the usual penal undertaking ordinarily required between owners and builders; but it operates equally in favor of those who furnish labor or materials, for the statute imposes upon the surety "the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any

prosecution of the work provided for under such contracts.''

This latter stipulation of the bond, therefore, is for the benefit of the materialman or laborer and is not affected by breaches of other terms of the contract, committed by other parties. As stated in the syllabus to *Kansas City ex rel.* v. *Schroeder,* 196 Mo. 281 (93 S. W. 405):

''The contract between the materialmen and the contractor is independent of the contract between the city and the contractor; therefore, the relief to which the materialmen are entitled does not depend upon the validity of the contract between the city and the contractor.''

Unless, therefore, the relator was a party to the breach of the main contract between the School District and the contractor its rights cannot be prejudiced by any act of either of the other stipulating parties. There is no charge of the kind against the relator. By the terms of the enactment it is entitled to bring an action on the undertaking for its own benefit and to pursue the same even to judgment and execution independent of the School District except the mere use of its name. It is stated in *United States* v. *National Surety Co.,* 92 Fed. 549 (34 C. C. A. 526), that:

''The two agreements which the bond contains, the one for the benefit of the government and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience. In view of these considerations, we are of the ·opinion that the sureties in a bond, executed under the act now in question, cannot claim exemption from liability to persons who have supplied labor or material to their principal to enable him to execute his contract with the United States, simply because the government and the

contractor, without the surety's knowledge, had made some changes in the contract, subsequent to the execution of the bond given to secure its performance which do not alter the general character of the work contemplated by the contract or the general character of the materials which are necessary for its execution · When the government has executed the contract and taken and approved the bond, it ceases to be the agent of third parties whom the contractor employs in the execution of the work or from whom he obtains materials and the rights of such persons under the bond are unaffected by subsequent transactions between the government and the contractor'': *Griffith* v. *Rundle,* 23 Wash. 453 (63 Pac. 199, 55 L. R. A. 381); *Conn* v. *State,* 125 Ind. 514 (25 N. E. 443).

All the allegations of the answer, therefore, respecting a change in the contract after its execution and delivery and of other violations not attributed to the relator may well be disregarded as affecting the right of the plaintiff to recover in this action.   Indeed, passing the denial on information and belief of the corporate existence of the relator, all that was incumbent upon it in the trial of the case was to prove its allegation about furnishing material and the failure of the contractor to pay for the same.

4. The Surety Company offered to show at the trial substantially this state of facts: The architect who had prepared the plans and specifications for the building and who was acting as the agent of the School District prepared a form of contract in Portland which was signed by the contractor in triplicate and by it taken to the Surety Company to whom it applied for the bond.   The company executed the bond and gave it to the contractor to be delivered to the School District. The officers of the contractor then went to Warrenton with the bond and the contract in triplicate signed by

itself and tendered the papers to the School District. The officers of the district then made some material changes in the contract increasing the obligation of the contractor without the knowledge of the Surety Company and signed the contract thus altered and retained the bond. The Circuit Court denied the Surety Company the right to show this state of facts under the pleadings as framed. This ruling was correct for the reason that the allegation was to the effect that the alterations were made after the execution of the contract, whereas the offer of proof was to show a change before the contract was executed. The allegations and the proof did not correspond. If the Surety Company intended to rely upon this state of facts it should have denied the execution of the bond and contract and then would have been fulfilled its statement in the brief that

"our contention is that there was no valid subsisting contract of insurance ever entered into between the Illinois Surety Company and School District No. 30, or any materialmen or laborers; that in fact, no contract of insurance was ever entered into at all on the part of the Illinois Surety Company."

Moreover, the new matter in the answer is controlled by the admission of the truth of paragraph V of the complaint. It being conceded in all the pleadings that a contract was entered into and that the bond was given, thenceforward a separate obligation arises in favor of the materialman and against the Surety Company which cannot be prejudiced by any of the matters averred in the answer. The judgment of the Circuit Court on the merits was right and is therefore affirmed.

5, 6. After judgment plaintiff filed his cost bill wherein he claimed for sundry witnesses and for a re-

porter's fee. The answering defendant filed objections to certain items, among others, against the amount claimed for two witnesses who were not called and did not testify in the case. Afterwards, without making any statement of the amount of costs and disbursements properly taxable in favor of the plaintiff, the court ordered

"that the plaintiff's cost bill filed herein be and the same is in all respects allowed, and the clerk of this court is hereby directed to tax the amount hereof as the costs of plaintiff in this action."

In its notice of appeal the Surety Company used this language:

"And appeal from the judgment of said court in taxing and allowing J. E. Tourtellotte $25.00 as witness fees and mileage, and Clara Munson $3.20 as witness fees in said cause."

On this branch of the case, which is a separate proceeding, as stated by Mr. Justice RAMSEY in *Perkins* v. *Perkins,* 72 Or. 302 (143 Pac. 995), the only matters on file and of record are the bill of costs and disbursements, the objection thereto and the judgment of the court. It is laid down by Section 570, L. O. L., that the only pleadings in a matter of disputed costs and disbursements are the statement of the prevailing party and the objection of the opposite litigant; that all issues involved by the statement and objections shall be heard by the court without a jury; that at such a hearing either party may produce any testimony either oral, by deposition or otherwise, to sustain the issues on his behalf; and that a bill of exceptions may be framed as in other actions. It is further required by this section that:

"As soon as convenient after the hearing, the court or judge thereof shall make and file with the clerk of

the court a correct itemized statement of the costs and disbursements as allowed by the court or judge, and shall render judgment thereon accordingly for the party in whose favor the same are allowed; and no other finding or conclusion of law or fact shall be necessary, and the same shall be final and conclusive as to all questions of fact."

It further provides for a separate appeal wherein the statement of disbursements, the objections, the statement of costs and judgment filed by the court or judge, the judgment or decree rendered therein, and the bill of exceptions, if any, shall constitute the judgment-roll. There is presented, therefore, for our consideration an appeal wherein the record consists of only the pleadings and the judgment without any findings to support it. Such a judgment is void under the authority of *Moody* v. *Richards,* 29 Or. 282 (45 Pac. 777), and *Clackamas Southern R. Co.* v. *Vick,* 72 Or. 580 (144 Pac. 84). The error is apparent on the face of the record itself so that no bill of exceptions is required: Section 172, L. O. L. The judgment of the Circuit Court upon the matter of costs and disbursements is reversed and remanded for further proceedings not inconsistent herewith.

Modified.   Costs Retaxed.

Mr. Chief Justice McBride, Mr. Justice Benson and Mr. Justice Harris concur.

Action of clerk in allowing costs approved January 15, 1918.

## ON OBJECTION TO COST BILL.

(169 Pac. 788.)

On objection to cost bill as allowed by clerk of this court.   Affirmed.

*Mr. John H. Hall,* for the objectors.

*Mr. George C. Fulton* and *Mr. A. C. Fulton, contra.*

Department 1.   MR. JUSTICE BURNETT delivered the opinion of the court.

7. The relator recovered a judgment in the Circuit Court.   In due time after the rendition thereof it filed its cost bill.   The defendant surety company objected to certain items thereof and being dissatisfied with the decision of the Circuit Court on that matter as well as with the result of the trial on the main issues found in the original pleadings it appealed not only from the latter decision but also from the one rendered by the court on the objections to the cost bill.   The hearing in this court resulted in an affirmance of the principal judgment with costs and disbursements in favor of the relator and a reversal of the judgment of the Circuit Court in the matter of costs with directions to remand the ancillary issue for further proceedings.   At this juncture the relator filed in this court a cost bill which was allowed in full by the clerk.   The surety company also tendered for filing here a cost bill on its behalf which the clerk refused to file or allow.   Consequent upon this the surety company has served upon the relator and now files a paper purporting to be a notice not only to the clerk but to the attorneys for the rela-

tor to the effect that the Surety Company appeals to
the justices of the Supreme Court from the decision of
the clerk "disallowing appellants' bill of costs and dis-
bursements, and declining to file the same, and from
the order of the said clerk filing and allowing respond-
ents' bill of costs and disbursements, and from the
whole thereof." This paper will be treated as an ob-
jection to the relator'$ cost bill notwithstanding it has
not been verified as required by Section 569, L. O. L.

The defendant contends that inasmuch as our former
decision reversed the ruling of the Circuit Court on
the matter of costs and disbursements it constituted
such a modification of the whole decision below as to
carry costs for the defendant in this court. In sup-
port of this contention the following precedents are
cited: *La Vie* v. *Crosby,* 43 Or. 612 (74 Pac. 220); *An-
derson* v. *Adams,* 43 Or. 621 (74 Pac. 215); *Gardner* v.
*Kinney,* 60 Or. 292 (117 Pac. 971). All these cases
were instances where the principal judgment itself was
modified to the advantage of the appellant. In *Ander-
son* v. *Adams,* although it was an action at law, the
principal judgment was modified without allowing
costs. Section 569, L. O. L., provides for the taxation
of costs and disbursements. Nothing can be allowed
in that behalf unless a verified statement of the pre-
vailing party with proof of service thereof, if notice
to the adverse litigant is required, shall be filed with
the clerk. Under certain circumstances it may be filed
as late as the first day of the next term. Such state-
ment shall be allowed of course by the clerk unless the
adverse party files objections thereto, stating particu-
lars. The statement and the objections constitute the
only pleadings required on the settlement of costs and
disbursements. The issues on that subject having
been thus made up, Section 570, L. O. L., has provided

87 Or.—10

the manner of their determination. The hearing is by the court or judge without a jury and provision is made for excepting to the rulings and for the formation of a bill of exceptions. It is required that the court embody its decision in the shape of ''a correct itemized statement of the costs and disbursements as allowed,'' and judgment is rendered thereon for the party in whose favor the same are allowed. That section also contains the following clause:

''The issues arising on the statement of disbursements, and the objections thereto, shall be heard and determined by the court or judge without either party recovering further costs or disbursements from the other, except that in the discretion of the court, or judge thereof, a sum not exceeding $5 as costs, but without further disbursements may be allowed to the party prevailing on the issues arising on the statement and objections thereto.''

The remainder of the section provides for an appeal in which the cost bill, the objections, the correct itemized statement made by the court, judgment thereon, and the bill of exceptions, if any, shall constitute the judgment-roll.

The procedure governing the settlement of costs and disbursements, although ancillary to the principal matter in dispute is, in practice, entirely separate from the latter and is *sui generis.* It is provided in Section 550, L. O. L., as amended by the act of February 28, 1913, Laws 1913, p. 617, that the aggrieved party may appeal orally at the time the judgment is rendered or by serving a written notice within sixty days thereafter if the appeal is from a determination of the Circuit Court, or, in other cases, within thirty days after the rendition of the judgment. We have seen that the party there prevailing is permitted to file his cost bill, at any rate, within five days after the judgment and

under certain circumstances by the first day of the next term, and that the opposite party may file his objections within five days thereafter. There is possible delay in hearing and determining the issues thus formed so that in many cases the sixty-day period allowed for appealing from the main judgment might elapse before such subsidiary matters were settled. All this indicates that the Code must be construed as making the two proceedings separate where the controversy is about the amount to be allowed as costs and disbursements. This principle is recognized in *Lemmons* v. *Huber,* 45 Or. 282 (77 Pac. 836), *Wadhams* v. *Allen,* 45 Or. 485 (78 Pac. 362), *Perkins* v. *Perkins,* 72 Or. 302 (143 Pac. 995), and *Morris* v. *Leach,* 82 Or. 509 (162 Pac. 253). We are bound, therefore, to consider the questions here involved as distinct from the principal judgment. It is not affected in any way by the present dispute.

The only provision for costs and disbursements in a procedure of this kind is that in Section 570, allowing $5 to the prevailing party in the discretion of the court. We find also in Section 581 the following:

"In any action, suit, or proceeding as to which the allowance and recovery of costs may not be provided for in this chapter or elsewhere in this Code, costs may be allowed or not, according to the measure herein prescribed and apportioned among the parties, in the discretion of the court."

Here, then, is a separate proceeding, the recovery of costs in which are discretionary to the extent of $5. It is not one which "is not provided for in this chapter." At best it would not be exercising sound discretion to cast the relator in costs when his judgment on the main issue was declared to be sound and a trifling error was discovered in the ancillary litigation.

In no event would it be proper to allow costs and disbursements in favor of the defendant on the main appeal. Even the prevailing party in the separate litigation about costs is not necessarily entitled to additional costs therein. Much less will he obtain them in the main dispute where his adversary secures a complete affirmance of his judgment. The action of the clerk in allowing the relator's cost bill and in refusing to file or allow the cost bill of the defendant will therefore be affirmed and a correct itemized statement of the costs and disbursements of the relator identical in amounts with the original will be filed as required by Section 570, L. O. L.

MODIFIED. COSTS RETAXED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.