Argued September 6; modified October 22; motion to modify
opinion allowed November 26, 1935

# UNITED STATES FIDELITY & GUARANTY CO. *v.*
# ZIDELL-STEINBERG CO. ET AL.

(50 P. (2d) 584, 51 P. (2d) 687)

*John W. Reynolds,* of Portland (Reynolds, Flegel & Smith, of Portland, on the brief), for appellants.

*W. K. Phillips,* of Portland (L. J. Balbach and Sheppard & Phillips, all of Portland, on the brief), for cross-appellant United States Fidelity & Guaranty Co.

*Allen H. McCurtain,* of Portland (William L. Harrison, of Portland, on the brief), for cross-complainant.

*W. C. Winslow,* of Salem, for respondents.

KELLY, J. This is a suit to determine amount of plaintiff's liability upon a contractors' bond and to enjoin the prosecution of actions at law thereon by certain of the contractors' creditors. From a decree requiring certain defendants to refund payments made by plaintiff to them and ordering the alleged balance due on said bond to be distributed pro rata among the contractors' creditors, the plaintiff and the defendants, The Texas Company, H. J. Nelson and State of Oregon ex rel. Howard-Cooper Corporation, cross-complainant, appeal.

On December 27, 1932, the State of Oregon, acting by and through the State Highway Commission, entered into a contract with F. C. Feldschau and Art Feldschau

doing business as Feldschau & Son, who for brevity will be referred to as the contractors, by the terms of which contract the contractors were to furnish approximately 5,000 yards of crushed rock to surface a portion of the state highway system known as the Jack Horner Creek-Mohler Section of the Oregon Coast highway in Clatsop and Tillamook counties, said contract being designated as Oregon State Highway Contract No. 1455.

On January 3, 1933, the contractors and the plaintiff, the United States Fidelity and Guaranty Company, a corporation, executed a contractors' bond to secure the performance of said contract and the payment of laborers and materialmen as provided by statute in the penal sum of $5,475, being the amount estimated to complete the contract.

During the month of June, 1933, the contractors became financially embarrassed and the work on the contract stopped. On or about July 4, 1933, further credit was refused them by certain of their creditors, among whom were The Texas Company and H. J. Nelson. This situation was made known to plaintiff by the contractors and by some of the creditors.

On July 13, 1933, the following letter was transmitted to H. J. Nelson and The Texas Company, to wit:

"July 13th, 1933.

Mr. H. J. Nelson,
The Texas Co.,
Tillamook, Oregon.          Re Feldschau & Son account.

Dear Sir:
In connection with the above captioned account for gasoline and oil used on contract No. 1455, known as the Jack Horner Creek-Mohler Job, I wish to advise you that F. C. Feldschau & Son were bonded on this job by the United States Fidelity & Guaranty Company.

The surety Company is responsible with the assured on this Job and all bills incurred under this Contract No. 1455 will be paid by either Feldschau & Son or by the Surety Company as soon as the job is done.

Very truly yours
United States Fidelity &
    Guaranty Company
By ---------------------------------------
    Victor L. White
    Attorney-in-Fact.

V L W : I J
Copy to Mr. Nason.''

As to Mr. White's authority to write the foregoing letter for plaintiff, Mr. White testified that Mr. Nason, who was then the plaintiff's superintendent of claims, authorized him to write it, in fact, dictated the letter to Mr. White over the telephone. A carbon copy of the following letter was introduced by plaintiff:

''July 14, 1933

Mr. Henry C. Hones, Supt.,
Surety Claim Department,
Home Office,
    58288-12-322--32- F. C. Feldschau - State of Oregon
                                    Local S-1534

Our principal came in with our agent, Mr. White of Tillamook, and reported himself in trouble.

The contract was for crushing some 5000 cubic yards of road surfacing material and delivering to stock piles. His prices were:

For ½ inch minus - - 85¢ per cu. yd.) In Bunkers
    '' ¾ inch minus - - 80¢ '' '' '' )
10 ¢ per yard - mile for hauling

He has been fiddling along getting out his rock at the rate of some 10 yards an hour. He has out some 3000 yards. His equipment is all rented except 4 old trucks that he owns and with which he is doing the hauling. The rock is hard and breaks out of the quarry in large pieces and so has to be worked over by again blasting or by hand work. The job is an emergency

relief job and requires hand labor getting the rock into the crusher.

It is obvious from his small out-put, the small-sized material the nature of the rock, and the hand-labor requirement that his price is ridiculously low.

| | | |
|---|---|---|
| The contract price was | $5,475.00 | |
| Extras | 400.00 | $5,875.00 |
| He has had estimates amounting to | | 2,066.00 |
| Balance to earn | | $3,809.00 |

He now has outstanding bills against the job amounting to approximately $5500. He estimates his cost to complete at $1500. This makes a charge of $7,000 with $3800 to earn, - a deficit of $3,200. It will run higher, first, because we never at this stage have all the bills, and, second, because his estimate for completion is too low. It has cost him some $2.50 a yard so far, and yet he thinks he can get out the remaining 2000 yards for 75¢. He can't, although it shouldn't cost as much as the former, because he now has a good part of the rock blasted down.

He had not cashed the last estimate of $1056, so we had him turn it over to Mr. White who will pay labor and keep the job going. (This amount is deducted from the outstanding bills.)

He should be done in 20 to 25 days. Then we will have the mess to clean up.

I suggest a reserve of $4,000.

I have not been able to ascertain anything definite on salvaging possibilities. He has another crushing plant, four trucks referred to above, and has listed some real estate, which I understand is in his wife's name.

The present necessity was to get the job started again - - he had shut down the last of June - -, thus get the State off our backs, and get the job completed without having to let the State take it over or take it over ourselves. With only 2000 yards to make it is too small to re-let except at excessive cost. We have accom-

plished this. He started up yesterday after White had paid some of the men, and assured the gasoline dealer that his bill would ultimately be paid.

I have got to go over on the I. L. Young job (H. O. claim 194633) next week and after I get back I will go over as soon as necessary and check this one out. But, except for possibly better salvaging prospects than I know now, I doubt if it will show up much different.

Supt. of Claims''

RBN:ET

Mr. White was asked the following question:

"Q. Now, did you undertake in behalf of the U. S. F. & G. to guarantee payment of other accounts to persons furnishing materials to this job in consideration of them continuing delivery of materials?"

His answer was as follows:

"A. I don't like the word 'guarantee' in there, because I merely passed on to these creditors what information had been given me by Mr. Nason in that the account would be paid, and I so informed creditors."

We quote further from Mr. White's testimony:

"Q. (By Mr. Flegel) Mr. Nason told you to do that? A. Yes.

Q. Why did he tell you to do that?

A. In order to continue the operation, I presume.

Q. Did he say that that was the reason? A. Yes.

Q. Did you advise them that that was the reason? A. Yes.

Q. To what different persons did you convey this information at Nason's request?

A. Mr. Nelson and Mr. Miller of the Sunset Garage, Shell Oil Company.

*　　*　　*　　*　　*

Q. Was there any condition or restriction to this arrangement that you made with these various materialmen? A. Yes.

Q. What was the restriction or condition, Mr. White?

A. That nothing be furnished except something was necessary on the job.

Q. Who was to okay it? A. I was.

Q. By whose direction? A. Mr. Nason's.

Q. Did you so inform these various people that you mention?

A. Yes.''

Defendant Nelson testified that prior to June 1 (1933) he owned and operated a service station in Tillamook; that some of the goods for the contract in suit were sold from the service station and other goods from the bulk plant on the job; that the sales from the service station were mostly for transportation of the employees to the job and were for Nelson's personal account; and that the sales from the bulk plant were for the Texas Company.

Mr. Nelson also testified that either on the 8th or 10th of July (1933) he had a conference with Mr. Nason, wherein Nason said ''I will take the matter right up and we will look in to see that you get your money.'' Nelson also testified that Nason said that he wished Nelson to continue to deliver as the job had to be completed and that payment for future deliveries would be taken care of either by Feldschau or the bonding company. Nelson also testified that following that conversation deliveries were made. While at one point in his testimony he said that he was willing to deliver on the strength of the contractors' bond alone, upon further questioning he said: ''Naturally, we wouldn't sell him unless the job was bonded and also Mr. Nason's promise to pay.''

Mr. Nelson also testified that he experienced difficulty in collecting on the account in question and that sometime in September or the first of October (1933)

he had a conversation with Nason to the effect that he (Nelson) had gotten his money from March deliveries to August 12 deliveries and that no more deliveries were to be made unless there was assurance that he would be paid and at that time Mr. Nason said that he would see that that money was paid and accordingly Nelson resumed deliveries.

An arrangement was made whereby the warrants for crushed rock delivered under the contract in suit were endorsed by the contractors, an account opened in the First National Bank of Tillamook, known as "Contract 1455" wherein moneys due the contractors were deposited and from which disbursement was made to creditors by Mr. White under the direction of Mr. Nason after approval of the respective accounts by the contractors.

Mr. George Lawson, an accountant employed by Mr. Nelson, testified that on or about the 23d of August (1933) Nason agreed to pay the account of the Texas Company and asked that the Texas Company go ahead and make further deliveries and that they would be paid.

From the entire record it appears that, at least as to Nelson and the Texas Company, plaintiff entered into a new and different contract from the one evidenced by the bond in suit. By the terms of that new contract, these creditors were to receive full payment without limitation in amount for materials furnished and to be furnished and for services performed and to be performed. With respect to these creditors, namely Nelson and the Texas Company, the rights and liabilities of the parties, namely, the State Highway Commission, the contractors, the plaintiff and the creditors aforesaid, are of the same character as if the plaintiff had taken over the contract and fully performed it.

In the absence of the new or modified contract, plaintiff's liability to Nelson and the Texas Company was conditional upon the default of the contractors and limited to the penal sum of the bond. The modified contract rendered them primarily liable without limitation in amount.

This principle is applied, though not elucidated by the circuit court of appeals of the ninth circuit in the case of the United States to the use of *Fidelity National Bank of Spokane v. Rundle et al.,* 100 Fed. 400. That was an action upon a contractor's bond for labor and material furnished the contractor. The Act of Congress providing for such bond is very similar to our statute. Among other defenses, the sureties interposed the defense that in the completion of the contract work from the point where Rundle left it, they necessarily expended not only the full amount received from the government (being the balance of the contract price unpaid when Rundle left off and the sureties assumed the work), but beyond and in excess thereof more than the amount of penalty of the bond. The trial court instructed the jury, among other things, that if the evidence satisfied the jury that in completing the contract the sureties necessarily expended all the money which they received from the government, and, in addition to that, a sum exceeding the amount named as a penalty of the bond, their liability thereon was fully exhausted and the verdict should be for the defendants.

The appellate court held that this instruction was erroneous and on that point said:

"The liability created by the bond was in no respect affected by what it cost to complete the work in accordance with the contract whether completed by the contractor himself or his sureties."

This case was followed by the supreme court of Washington in the case of *Griffith v. Rundle et al.,* 23

Wash. 453 (63 P. 199, 55 L. R. A. 381). We quote from the final paragraph of the opinion by Mr. Justice Reavis in the Washington case:

"2. It is pertinent to suggest that in the performance of the unfinished contract by the sureties, if they had expended less than the amount to be paid by the government on the completion of the contract, the excess or profit would have belonged to them, and, if they undertook the completion of the contract and sustained a loss, it would seem that it should fall upon them. As sureties under the terms of the contract, they might elect to complete it upon default of their principal, but such completion was not the full performance of the contract by the principal himself."

█ In the case at bar the contract was fully completed and accepted by the State Highway Commission; but under the doctrine of the Rundle cases, above cited, the payments made in thus completing the work in accordance with the contract did not affect the liability created by the bond.

The principle is thus tersely stated:

"* * * when a surety, either corporate or individual, in pursuance of the terms of an undertaking, 'assumes' the performance of the principal's contract, such surety, by being subrogated to the rights of the principal thereunder, must necessarily become subject to all his liabilities." *Ausplund v. Aetna Indemnity Co.*, 47 Or. 10, 20 (81 P. 577).

The same principle is applied, but to a different state of facts from those of the case at bar in *Suetter v. Cornwall et al.*, 102 Or. 220, 231 (201 P. 1072).

"One who is in reality a surety may contract as a principal. He may waive the rights which the law throws around a surety, for such a waiver has nothing in it offensive to the law; and the surety does waive such rights when he in terms contracts and agrees to be bound as principal." *Beers v. Wolf*, 116 Mo. 179 (22 S. W. 620); *Merchants Nat. Bank v. Murphy et al.*, 125 Iowa, 607 (101 N. W. 441); *Heath v. Derry Bank*, 44

N. H. 174, 180; *Donald v. First Nat. Bank of Commerce,* 100 Miss. 174 (54 So. 721).

■ The record does not disclose any facts upon which it can be held that as to the claim of the Industrial Accident Commission plaintiff contracted as principal. It is apparent that the payment which plaintiff made thereon was made in good faith without knowledge, either actual or constructive, that the creditors' claims would exceed the total of the payments by the highway commission on the contract and the penal sum in the contractors' bond. In this state of the record, the weight of authority and the better reasoning support the view that plaintiff as surety is entitled to credit in full for such payment: *David W. Witter et al. v. Massachusetts Bonding & Insurance Co.,* 215 Iowa, 1322 (247 N. W. 831, 89 A. L. R. 1065), and authorities cited in annotation.

■ The Standard Oil Company, not having appealed, is bound by the decree of the circuit court requiring it to refund the payment made to it by plaintiff. It follows that the amount of over payment, namely, the difference between the amount of said payment and the distributive share to which the Standard Oil Company is entitled, namely, the sum of $94.83 should be paid into court for plaintiff.

The decree of the circuit court is attacked in three particulars:

(1) The plaintiff appeals from that portion of it requiring plaintiff to pay attorneys' fees and court costs incurred in actions at law instituted by defendants Gabriel Powder & Supply Company, Steinbach Iron Works and Tillamook Iron Works. (2) The cross-complainant, State ex rel. Howard-Cooper Corporation, appeals from that portion declaring that plaintiff shall be discharged from all further liability upon payment

of said court costs and attorneys' fees; and (3) the defendants, The Texas Company and H. J. Nelson appeal from the portion requiring said last named defendants to refund payments heretofore made to them by plaintiff for the purpose of augmenting the amount deposited with the court for distribution and also requiring said last-named defendants to share ratably with other creditors in the distribution of said fund.

Section 46-134, Oregon Code 1930, as amended by chapter 355, Oregon Laws 1931, pp. 620, 621, among other things, provides:

"Whenever any suit or action is brought in any court of this state upon any policy of insurance of any kind or nature whatsoever, * * * the plaintiff, in addition to the amount which he may recover, shall also be allowed and shall recover, as part of said judgment such sum as the court or jury may adjudge to be reasonable as attorney's fees in said suit or action; provided, that settlement is not made within six months from the date proof of loss is filed with the company or society; provided further, that if a tender be made by a defendant in any such suit or action and the plaintiff's recovery shall not exceed the amount thereof, then no sum shall be recoverable as attorney's fees."

Section 49-702, Oregon Code 1930, among other things, in effect provides:

That any person, who has supplied labor or material in furtherance of a public improvement contract is authorized to institute an action against the contractor and surety or sureties on his own relation, but in the name of the state of Oregon, or other municipality or subdivision concerned and to prosecute the same to final judgment and execution for his own use and benefit; and that in any such action the prevailing party shall recover such attorneys fees therein as the court shall adjudge reasonable.

The record in the case at bar discloses oral statements that actions at law were instituted by certain of the defendants. Counsel for defendant, Gabriel Powder & Supply Company, Steinbach Iron Works and Tillamook Iron Works indicated that they desired to introduce the record of cases instituted by them against plaintiff, but no such record was introduced. Witnesses herein testified that such actions had been instituted; but the contents of the pleadings therein have not been shown nor the extent of the work done by the attorneys in such actions.

Not having the record of the cases mentioned we are unable to determine which, if either, of the above mentioned sections of the statute is applicable thereto.

Section 46-134, supra, prescribes that the recovery of an attorney's fee shall be part of the judgment; while section 49-702, supra, gives the right of recovery of an attorney's fee to the prevailing party. It would seem that both sections restrict the recovery of an attorney's fee to those cases wherein a final judgment has been entered. Certainly an attorney's fee, which is part of a judgment is distinct and apart from one which is no part thereof and it is equally certain that until a judgment has been rendered the prevailing party is undetermined.

Moreover, it is elementary that to support a judgment or decree there must be appropriate allegations in the pleadings, and, when issue is joined, there must be proof in support of such allegations. Without any record at all of the cases mentioned, we can not say that there was either the required allegation or proof.

Such being the state of this record, no judgment for attorney's fees or costs in said actions or either of them should have been rendered herein.

As to the second contention, that of the defendant and cross-complainant, the State on the relation of

Howard-Cooper Corporation, we hold that plaintiff should not be discharged from its liability on said bond until it has paid into court the full penal sum thereof less the amount of its payment to the State Industrial Accident Commission, and the proportional amount of its payment to the Standard Oil Company representing the pro rata distributive share of said company.

■ The third question involves a consideration to the effect of the course taken by plaintiff when apprised that the contractors had exhausted their credit. As stated, we think that this course changed the relationship of plaintiff, as far as these appealing defendants Nelson and the Texas Company are concerned, from that of mere surety to that of principal; and that the decree should be modified by omitting therefrom the order directing said defendants, the Texas Company and H. J. Nelson to make said or any payment, repayment or refund herein, and also by omitting from said decree the order permitting said defendants, The Texas Company and H. J. Nelson to share ratably in the distribution aforesaid.

We find nothing in the record disclosing that the Howard-Cooper Corporation had any agreement whereby, with respect to said corporation, plaintiff's relationship as surety was changed to that of principal; and, hence, said corporation is entitled only to its pro-rata distributive share.

■ The Howard-Cooper Corporation, through its attorney, argues that section 67-1101, Oregon Code 1930, as amended by chapter 280, Oregon Laws, 1931, requires the surety therein mentioned to pay all just claims for labor and material in full regardless of the penalty named in the bond. We are cited to the provision in said section requiring the contractor "to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or

contractors shall promptly make payments to all persons supplying him or them labor and materials,'' etc.

We construe the clause above quoted as recognizing a very usual or common form of undertaking to the effect that if the principal shall well and truly perform and complete the work required of him by the terms of the contract in question the undertaking shall be void, otherwise to be and remain in full force and effect; and expressly adding thereto the further condition that such contractor shall promptly make payments, etc. Its language does not warrant the construction that the amount of the penalty of the bond should be disregarded in determining the extent of the liability of the surety thereupon.

There is nothing in the opinion in *Fitzgerald v. Neal* which holds that the amount of the penal sum named in a contractor's bond does not restrict thereto the liability of the surety thereon. In that case, neither the contract nor the undertaking was produced upon the trial. The complaint, however, alleged, and it was admitted in the answer, that by the terms of the undertaking the construction company and the surety company expressly undertook to ''promptly pay all laborers, mechanics, subcontractors and materialmen and all persons who shall supply such laborers, mechanics or subcontractors with material supplies or provisions for carrying on such work and all just debts, dues and demands incurred in the performance of such work''. No reference is made to the amount of the penal sum named in the bond: *Fitzgerald v. Neal,* 113 Or. 103 (231 P. 645).

In *Title & Trust Company v. United States Fidelity & Guaranty Company,* 138 Or. 467 (1 P. (2d) 1100, 7 P. (2d) 805), the amount of the surety's liability was restricted to the amount of the penal sum named in

the bond. See also the opinion on second appeal of the same case, 147 Or. 255 (32 P. (2d) 1035).

In *School Dist. No. 30 v. Alameda Constr. Co.*, 87 Or. 132 (169 P. 507, 788), the fifth allegation of the complaint upon which, as stated in the opinion, the case hinged, among other things, it is alleged that the Alameda Construction Company and the Illinois Surety Company executed and delivered unto the school district their bond obligatory in writing in the penal sum of $11,400 wherein the surety company covenanted, among other things, that in case of the default of the construction company in making certain payments the surety company "therein obligated itself to make such payments not exceeding said sum of $11,400". It thus appears that no contention was there made that the surety's liability was more than the penal sum of the bond.

*Commercial State Bank v. Palmerton-Moore Grain Co.*, 152 Wash. 89 (277 P. 389), is cited by defendant and cross-complainant. That case adapts the doctrine of *Salo v. Pacific Coast Casualty. Co.*, 95 Wash. 109, (163 P. 384, L. R. A. 1917D, 613), to a warehouse bond. The Salo case was that of a "jitney bus" bond. The Washington statute giving a remedy thereon to every person injured by the negligence of the operator of such a motor vehicle was construed by the court: Sec. 5562-39 Remington's 1915 Codes and Statutes. As stated, the Palmerton-Moore Grain Company case was a warehouse bond case and was based upon Sec. 5, Chap. 189, Session Laws 1919, p. 591 (Sec. 6982, Vol. 2, Remington's Comp. Stat. 1922, p. 1509). Both of these cases have been considered by this court. Speaking through Mr. Chief Justice Campbell, this court has said:

"Salo v. Pacific Coast Casualty Company, supra, as reported in L. R. A. 1917D, 613, has an extensive note

in which the doctrine announced in the reported case is criticised and other cases digested show that the weight of authority is contrary to that announced in the reported case." *New Amsterdam Casualty Co. et al. v. Hyde et al.,* 148 Or. 229 (34 P. (2d) 930, 35 P. (2d) 980).

Pennsylvania and Florida courts have held that a municipal ordinance is unreasonable and therefore void to that extent, which attempts to render the surety on a jitney bus operator's bond liable for other and additional amounts without limit, after recovery to the amount of the penal sum in the bond: *Jitney Bus Assn. v. Wilkes-Barre,* 256 Pa. 462 (100 Atl. 954); *State ex rel. Stephenson v. Dillon,* 82 Fla. 276 (89 So. 558, 22 A. L. R. 227), say:

"* * *. No surety company could properly be asked to undertake such an indefinite and unlimited responsibility." *Jitney Bus Assn. v. Wilkes-Barre,* supra.

We adhere to the doctrine announced in *New Amsterdam Casualty Co. v. Hyde,* supra, and other cases in accord therewith to the effect that the surety is liable in the aggregate only to the extent of the penalty named in the bond. "This, of course, does not include attorney's fees, interests or costs.": *New Amsterdam Casualty Co. v. Hyde,* supra; 50 C. J. 74, Sec. 128, authorities cited in note 22, subject, Principal and Surety.

We also hold that plaintiff is entitled to the injunctive relief sought by its complaint herein; but is liable to the unpaid creditors in the full amount of the penal sum of the bond, except that the pro rata distributive share of the Standard Oil Company, the payment made by plaintiff to the State Industrial Accident Commission, and the amount heretofore deposited in court by plaintiff should be treated as credits thereon.

In plaintiff's complaint it is alleged that there is now in the hands of the State Highway Commission

payable to the contractors and plaintiff the final estimate in the sum of $577.43 due under the contract in suit. This is supported by the testimony. The State Highway Commission is not a party to this proceeding and no order effective upon said commission is proper herein; but under plaintiff's allegation plaintiff is chargeable with this sum for distribution in addition to the balance of the penal sum of its bond, thereby further augmenting, by said sum of $577.43, the amount which otherwise would be available for distribution. In thus holding we further hold that if for any valid reason plaintiff be unable to collect said sum of $577.43 from said State Highway Commission, upon a proper showing to that effect, an order should be made relieving plaintiff from liability therefor.

The testimony discloses that the sum of $16.14 is in the hands of plaintiff's representative, being an unexpended balance derived from the payments made by the State Highway Commission upon said contract. This sum also should be included in the amount to be distributed.

The aggregate amount for distribution therefore consists of the following items:

| | |
|---|---:|
| Penal sum of bond | $5,475.00 |
| Amount due from State Highway Commission | 577.43 |
| Amount in hands of plaintiff's representative | 16.14 |
| | $6,068.57 |
| Less amount paid State Industrial Accident Commission | $ 257.26 |
| And amount of Standard Oil Company's pro rata distributive share | 236.21 |
| | $ 493.47 |
| Balance for distribution | 5,575.10 |
| | $6,068.57 |

A partial distribution was made by order of the trial court. The names of the creditors to participate pro rata in accordance herewith, the amount of their respective claims, the respective gross amounts to which they were entitled respectively, the respective amounts accorded to each claimant respectively by the trial court under said order of partial distribution and the respective net amounts due after deducting the respective amounts distributed under said order of partial distribution, are as follows:

| Claimant | Amount of Claim | Gross Distributive Share | Former Distri- bution | Net Amount Due |
|---|---|---|---|---|
| Zidell Steinberg Co. ..........$ | 117.15 | $   83.59 | $   46.86 | $    36.73 |
| Steinbach Iron Works ...... | 850.18 | 606.64 | 340.07 | 266.57 |
| Tillamook Iron Works ...... | 285.21 | 203.51 | 114.08 | 89.43 |
| Garabaldi Transfer Co. .... | 129.45 | 92.37 | 51.78 | 40.59 |
| Walter Earl ......................... | 52.06 | 37.15 | 20.82 | 16.33 |
| Gabriel Pdw. & Sup. Co..... | 609.02 | 434.57 | 243.60 | 190.97 |
| Sunset Garage ..................... | 697.37 | 497.61 | 278.94 | 218.67 |
| Howard-Cooper Corp. ...... | 1,590.00 | 1,134.54 | 636.00 | 498.54 |
| State Ind. Acc. Com. ........ | 259.72 | 185.32 | 103.90 | 81.42 |
| A. W. Davis Supply Co. .... | 116.72 | 83.29 | 46.68 | 36.61 |
| Shell Oil Co. ......................... | 303.36 | 216.46 | 121.34 | 95.12 |
| Union Oil Co. ...................... | 193.87 | 138.34 | 77.54 | 60.80 |
| Clyde Equipment Co. ........ | 1,113.33 | 794.42 | 445.33 | 349.09 |
| Forrest Baty ....................... | 8.80 | 6.28 | 3.52 | 2.76 |
| Pearl Etzweiler ................. | 1.50 | 1.07 | .60 | .47 |
| J. Hanson ............................. | 77.49 | 55.29 | 30.99 | 24.30 |
| George A. Perkins ............. | 4.40 | 3.14 | 1.76 | 1.38 |
| W. M. Kinney ..................... | 552.32 | 394.11 | 220.92 | 173.19 |
| E. E. Scofield ..................... | 22.90 | 16.34 | 9.16 | 7.18 |
| L. B. Lucas ......................... | 4.00 | 2.85 | 1.60 | 1.25 |
| George Stoll ......................... | 134.27 | 95.81 | 53.70 | 42.11 |
| Emery E. Wagner ............. | 186.13 | 132.81 | 74.45 | 58.36 |
| George W. Davis ................ | 70.26 · | 50.13 | 28.10 | 22.03 |
| E. Earl ................................ | 9.02 | 6.44 | 3.60 | 2.84 |
| F. V. Briody ......................... | 11.17 | 7.97 | 4.46 | 3.51 |
| N. I. Hindes ......................... | 6.80 | 4.85 | 2.72 | 2.13 |
| John Zumstein ................... | 22.03 | 15.72 | 8.81 | 6.91 |
| S. L. Riefenberg ................ | 308.02 | 219.79 | 123.20 | 96.59 |
| Fred Stryfeller ................... | 76.65 | 54.69 | 30.66 | 24.03 |
| Totals ...........................$ | 7,813.20 | $5,575.10 | $3,125.19 | $2,449.91 |

■ On oral argument, it was suggested that attorneys' fees should be allowed in this proceeding, but we think that this character of a proceeding is not controlled by the statute authorizing the allowance of attorneys' fees.

Neither of the parties hereto should recover costs or disbursements herein from any of the other parties.

It is ordered that this cause be remanded with directions that a decree be entered modifying the decree of the circuit court in accordance herewith.

ROSSMAN, J., not sitting.

---

Motion to modify opinion allowed November 26, 1935

ON MOTION TO MODIFY
(51 P. (2d) 687)

KELLY, J. A motion has been presented, by the Gabriel Powder and Supply Company, to modify the decision and order of this court with reference to the disallowance of attorneys' fees claimed by said movent and by Steinbach Iron Works and Tillamook Iron Works.

The basis of this motion is the order of May 14, 1935, wherein plaintiff's appeal from the decree of the circuit court was dismissed. In rendering the original opinion, the writer overlooked this order.

■ The principle sought to be invoked, in support of said motion, is that a litigant, who does not appeal, is not entitled to a more favorable judgment than the one given by the trial court. Attorneys' fees, however, are only incidental to the judgment, being analogous to costs and disbursements: *Spicer v. Benefit Ass'n of Ry. Employees,* 142 Or. 574, 601 (17 P. (2d) 1107, 21 P. (2d) 187, 90 A. L. R. 517). As stated in the opinion, the

record on this appeal does not justify the allowance of attorneys' fees to the parties mentioned. By rule 12, this court reserves the right in furtherance of justice to take cognizance of error apparent on the face of the record. The judgment rendered on appeal herein against plaintiff is less favorable to plaintiff than the one entered by the trial court.

In reading the record, it appears to the writer that when movent's attorney mentioned the matter of attorneys' fees the trial court at once announced that movent and its associates would be allowed such fees. The writer found no stipulation on the subject. It further appeared to the writer that the attorneys' fees and costs in the actions involved were not any part of a judgment or judgments in such actions or any or either of them. In that state of the record neither the attorneys' fees nor the costs should have been allowed. In rereading the record, the writer again finds it to be as above stated.

These considerations would result in an unconditional denial of said motion, but for the fact that the record indicates that at the trial in the circuit court movent and its associates in this motion believed that the records in the cases mentioned were received for consideration by the trial court. It is also evident that the trial court did consider such records. If a judgment, based upon proper pleading and procedure, has been rendered in any of said cases, and such judgment includes costs and an attorney's fee, the party in whose favor such judgment was rendered ought not to be deprived in this proceeding of the costs and attorney's fee so awarded. Moreover, if there was a stipulation upon which such costs and attorneys' fees were allowed, the allowance thereof should be upheld.

The original opinion, therefore, is hereby modified to the effect that application may be made to the trial court by said movent and said Steinbach Iron Works and Tillamook Iron Works to supplement the record by the introduction of judgments, if any, allowing costs and attorneys' fees respectively in the cases mentioned; or by showing that a stipulation was duly made upon which such costs and attorneys' fees were allowed.