Argued September 6; affirmed September 26, 1939

# WILSON *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(94 P. (2d) 129)

In Banc.

*Oliver Crowther*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and C. S. Emmons, Assistant Attorney General, on the brief), for appellant.

*Wm. P. Lord,* of Portland (T. Walter Gillard, of Portland, on the brief), for respondent.

KELLY, J. On the 23rd day of February, 1937, while employed as helper upon a truck plaintiff had

taken some furniture off of a freight elevator. Upon returning to the elevator he found its entrance gate open and walked through the opening thinking that the elevator was in the place where he had left it. In the meantime, however, some one had caused the elevator to move to another floor, and for some reason, which is not shown, the gate did not come down and close the entry on the floor where plaintiff was working, although, in the normal use of the elevator, the entry gates are automatically closed when the elevator passes from one story to another. As a result, plaintiff fell 13 feet and sustained serious injuries.

The injury to his back is manifested by tenseness or contraction of the muscles that come down on each side of the midline. The only physician, who testified, Dr. Poyntz, said that in medicine, this condition of the muscles is termed spasticity or a spastic contraction, the significant feature of which is that underneath the muscles there is something sore, inflamed and painful that those muscles are protecting.

Plaintiff testified that, prior to the fall mentioned, he was in good health and physical condition, except that some years before he had lost the fingers of one hand; that, immediately after said fall, he suffered from numbness in his left leg, painful stiffness in his back and incontinence of urine; that while the numbness in his leg had somewhat abated, he still suffers from the injury to his back and from said urinary trouble; and that he could not bend his body more than 15 degrees from a perpendicular position.

The record plainly discloses that since the accident plaintiff has suffered constantly from urinary incontinence. For a time immediately following his fall, a discharge of blood appeared in his urine.

Defendant contends that there was no evidence that respondent suffered any permanent partial disability by reason of injuries to his back greater than that awarded to him by the commission.

■ As to that point, we are unable to agree with defendant. Evidence of inability to bend his body more than 15 degrees coupled with the presence of a sore, inflamed and painful condition on both sides of his back, which had been continuous from the time of the accident to the time of the trial, a period of more than a year and two months, especially when there is no contradictory evidence, is sufficient upon which to base the award made by the jury and the trial court. At least, as merely a reviewing tribunal, we are not warranted in holding it insufficient.

■ Defendant also urges that there was no evidence that the alleged injury to plaintiff's urinary system constituted a permanent partial disability. Evidence that prior to the accident, plaintiff had no such impairment and that immediately thereafter the condition of incontinence manifested itself, at first accompanied by the passing of blood in the urine, and that it has been a continuing affliction ever since, for which a medical expert testified that he knew of no specific, is sufficient upon which to base a finding of permanency.

The third point is to the effect that there is no evidence upon which the extent of such disability could be based except by speculation. To so hold would prevent an award in nearly every case which baffles both diagnosticians and those who prescribe treatment. Human affliction cannot be measured as easily as cordwood, but one purpose of the Workmen's Compensation Act is to afford an agency which will measure and

appraise it. We are unwilling to term the method of such appraisal merely a resort to speculation. The necessity of constantly wearing and frequently changing a pad to absorb the discharge of urine, the inconvenience and embarrassment of guarding and caring for such a malady through the night, every night, the distress, because of attendant odor, and the consequent interference with social, business and industrial activity are some of the elements which cannot be deemed speculative. They are cruelly hard realities in plaintiff's case. Unquestionably, they constitute a serious impairment of his normal, physical functions. We are at a loss to understand how anyone could come to any other conclusion.

Defendant cites *Frint v. Amato,* 131 Or. 631, 647, 284 P. 183; *Vale v. State Ind. Acc. Com.,* 160 Or. 569, 86 P. (2d) 956, and *McKay v. State Ind. Acc. Com.,* 161 Or. 191, 87 P. (2d) 202.

■ The first of these three Oregon cases deals with the question whether, under the testimony therein, the question of the alleged permanency of the injuries to plaintiff's vision and nervous system should have been submitted to the jury. The well established rule is there recognized to the effect that, if from the testimony it can be said that there is a reasonable probability of the injury being permanent, then the question may properly be submitted to the jury. [*Madden v. Columbia & Nehalem River R. R.,* 101 Or. 562, 569, 200 P. 1038] In the Frint-Amato case, however, the court stated that "a careful examination of the evidence does not indicate that there is any which may be said to show that any of the claimed resulting injuries are permanent in their nature." On the contrary, the affirmative evidence on that subject is to the effect that said

injuries are not permanent in character." In the case at bar there is no evidence, affirmative or otherwise, to the effect that the impairment to plaintiff's urinary tract is not permanent. Page 646, *Frint v. Amato*, supra.

We quote excerpts from the testimony of Dr. Poyntz, the only medical expert who testified:

"Q. Now, then, Doctor, can you tell us whether or not in your opinion, from what you now know about this urinary condition, as to whether or not that condition is probably a permanent condition?

A. It is a very, very difficult question to answer, and answer honestly, because if you don't know what it is, it is pretty hard to say, but it has persisted for a year now, if it is not clearing up in the normal course of events, if there is no improvement, and I don't know what to do for it, I would think it would continue.

The Court: Would you think it would be permanent?

A. I would think so, Your Honor, yes, unless someone knows more about it than I do and can treat it. * * *" [From this point, the witness discussed the possibility that a shadow appearing in one of the X-ray films may indicate the presence of a kidney stone, except for the fact that it is almost entirely round.]

"The Court: Does it" [said shadow] "show on any of the other X-rays?

A. It doesn't, no. So it might be something in the bowel. Now, I don't know what your question was that I am answering.

Mr. Gillard: You answered the question, stating in your opinion the urinary condition was permanent.

A. I think I did. If not, I do now."

The foregoing excerpts from the testimony of the medical expert constitutes affirmative testimony to the effect that plaintiff's urinary impairment is permanent.

The other Oregon cases above cited decide that in those cases there was not a sufficient showing that

the injuries, upon which the claims for compensation were based, arose out of or in the course of the employment. The record in this case is barren of anything tending to show that plaintiff was injured as claimed herein in any other way than by the fall first hereinabove described.

Defendant alleges error on the trial court's part in overruling defendant's motion for judgment despite the verdict and in entering a judgment in favor of plaintiff against defendant.

In addition to the points we have already discussed, two phases of the record are urged in support of the contention that error was thus committed.

Paragraph one of plaintiff's complaint comprises the first phase of the record upon which defendant relies. Said paragraph is as follows:

"That plaintiff was employed by Wilson Auction House in Portland as a lumper and truck driver, and while engaged in moving a table in an elevator, fell down the elevator shaft, causing an injury to plaintiff's lower back and to the bladder; that the injury to plaintiff's back is in the sacrum and around the fourth and fifth lumbar vertebrae, and is a tearing loose of the ligaments and injury to the nerves, and a straining of the muscles; that said injury is equal to 40 degrees; that plaintiff sustained an injury to the bladder and urinary system, to the extent of 56 degrees; that said injuries manifest themselves in a continual leakage of urine, and no control over the urinary organs; that plaintiff is unable to state the specific cause thereof, as averred, but says that the same is due to injury to the nerves controlling said parts."

The instruction of the trial court concerning the second of the two questions submitted to the jury and the failure of the jury to answer such question presents

the second phase of the record upon which defendant relies. The second question is as follows:

"Second, what is plaintiff's permanent disability as the same relates to his urinary system only, resulting from said accidental injury, expressed in percentage of loss of function of an arm?"

The instruction of the court with reference to this question is as follows:

"When you have arrived at an answer to the interrogatories that are submitted here, then you will cause the verdict to be signed by your foreman and will return it into court as the verdict of the jury. Now, in the event that you should determine from the evidence, or should not be satisfied from the evidence or a preponderance thereof that the plaintiff's trouble in his urinary system is due to this accidental injury,—in other words, if you are not satisfied that that condition has any relation to the accidental injury, then you will just leave that second question blank, you will not answer it at all. You understand that, now. You must first determine that the urinary trouble came from this accident before you would consider the second question, and if you don't so determine, then you would just leave the second question blank and not answer it at all."

The jury did not answer the second question.

The verdict consists of but two questions and the answer of the jury to the first question.

The first question and the answer thereto are as follows:

"First: What is the permanent partial disability suffered by plaintiff as the result of the accidental injury of February 23, 1937, in so far as the same is confined to his back, expressed in percentage of loss of function of an arm?

Answer: 100 per cent of an arm."

It is argued that the judgment remanding the cause to the defendant commission for the purpose of awarding and paying to plaintiff compensation in accordance with the terms of said verdict is not supported by plaintiff's complaint for the reason that in the first paragraph thereof, above quoted, it is not alleged that the injury to the back is in excess of 40 degrees, while a rating of 100 per cent is equivalent to 96 degrees.

In support of this contention defendant invokes the rule that to support a judgment or decree, there must be appropriate allegations in the pleadings.

This brings us to a consideration of plaintiff's complaint.

■ For two reasons a liberal rule will be applied to construing it. The first being that issue upon a question of fact has been joined and the second being that the purpose of the Workmen's Compensation Act was in part to avoid the strict rules formerly applied to claims by workmen for compensation on account of injuries sustained in the course of their employment. As well said by Mr. Justice BELT: "In the administration of the Workmen's Compensation Act, we should not be greatly concerned over technical error." *Hartley v. State Ind. Acc. Com.*, 123 Or. 310, 313, 261 P. 71.

Bearing in mind that the defendant commission had awarded compensation for the injury to plaintiff's back on a basis of 48 degrees of disability, it is quite evident that the allegation in paragraph one of plaintiff's complaint to the effect that said injury was equal to 40 degrees was an inadvertence. Certainly the defendant commission was not warranted in relying upon that statement as constituting an offer by plaintiff to accept a less favorable rating on account of his back injury than the one in force at the time.

At the conclusion of paragraph two of plaintiff's complaint, it is stated: "the defendant should award plaintiff disability equal to 96 degrees."

In paragraph six of said complaint, there is an allegation to the effect that upon the first day of October, 1937, plaintiff filed a supplemental petition for rehearing in which, among other things, it was alleged that plaintiff had sustained an aggregate permanent partial disability equal to 96 degrees.

In paragraph seven of said complaint, it is alleged that on the 18th day of November, 1937, plaintiff filed an additional petition for rehearing which included a prayer for an award of 96 degrees permanent partial disability.

Paragraphs six and seven of plaintiff's complaint are not denied.

In paragraph eight of plaintiff's complaint, it is alleged:

"That plaintiff is dissatisfied with the aforesaid orders and final award and rating of permanent partial disability, and avers that he has sustained a disability equal to 96 degrees, and the defendant erred in not so finding."

■ Defendant's attorney must have construed the complaint as presenting an issue as to the extent of disability on account of injury to plaintiff's back because he requested a special finding upon that issue. If defendant commission had been relying upon the statement in paragraph one of plaintiff's complaint as an admission that the back injury had caused but a 40 degree disability, while the commission had made a rating of 48 degrees disability, its attorney would not have asked any finding whatever upon that phase of the case; neither would he have asked for a judgment

awarding compensation upon the basis of a 48 degree disability.

In *Haberly v. Farmers' Mutual Fire Relief Association*, 132 Or. 32, 293 P. 590, cited by defendant, there was no suggestion that the insurance company had admitted that the value of the barn was in excess of $5,000. In his complaint, the plaintiff alleged its value as $5,000. This allegation was put in issue by an unqualified denial; and a prior unqualified denial of liability by defendant is alleged by plaintiff and admitted by defendant. The jury found it to be of the value of $7,000.

In *Olds v. Von der Hellen et al.*, 127 Or. 276, 270 P. 497, also cited by defendant, this court held that the trial court had failed to consider certain determinative factors in adopting the measure of damages. Upon rehearing, this court held that plaintiff was bound by an allegation in his complaint giving defendants credit for $1,500, although legally defendants could not have secured such credit. There was no admission on defendants' part that plaintiff had suffered any damage whatever.

In *United States Fidelity & Guaranty Co. v. Zidell-Sternberg Co.*, 151 Or. 538, 50 P. (2d) 584, 51 P. (2d) 687, also cited by defendant, this court in its original opinion held that there was no record upon which it could determine whether certain of the defendants should recover attorney's fees. On rehearing, however, the original opinion was modified in order to give effect to such of the record as the trial judge had considered. In this case the question involved was not decided on appeal by construing any pleading.

In the case at bar, we think that the parties, both plaintiff and defendant, as well as the trial court,

treated the pleadings as if an issue were joined upon the question whether plaintiff's disability by reason of his dorsal injuries constituted a 48-degree impairment a greater and more serious one.

Upon oral argument, defendant urged that in the absence of expert medical evidence supporting it, the rating of disability awarded by the trial court could not be sustained.

We think that rule is restricted to those cases where merely a question of medical science is involved of such a nature that only medical experts are qualified to express an opinion upon it.

As to the injury to plaintiff's back, certainly it requires no doctor to testify to plaintiff's inability to normally flex his body and to the pain he suffers in that region when he is shaken or jarred. As to his urinary affliction, no doctor need be called to tell us how it affects plaintiff. Plaintiff himself knows more about that than anyone else. Of course, because plaintiff is not a physician, he is not qualified to express an opinion on the matter; but certainly he is a competent witness as to the state of his health with respect to those maladies familiar to laymen. 22 C. J., Evidence, Sec. 710, p. 618, and cases there cited.

*Hartley v. State Ind. Acc. Com.* supra; *Crosby v. Portland Ry. Co.*, 53 Or. 496, 504, 100 P. 300; *Nichols v. Kluver*, 61 N. D. 42, 237 N. W. 640; *Cromwell Franklin Oil Co. v. Cox*, 147 Okl. 226, 296 P. 446; *Parsons-Gibson Buick Corp. v. Fox*, 152 Okl. 196, 4 P. (2d) 38; *Texas Emp. Ins. Assn. v. Perry*, (Tex. Civ. App.) 35 S. W. (2d) 1087; *Ensley Holding Co. v. Kelley*, 229 Ala. 650, 158 So. 896; *Gossett v. Metropolitan Life Ins. Co.*,

208 N. C. 152, 179 S. E. 438; *Southwestern Cotton Oil Co.
v. Hall*, 172 Okl. 644, 46 P. (2d) 455; *American Nat. Ins.
Co. v. Walker*, (Tex. Civ. App.) 81 S. W. (2d) 1061;
*Amrovcik v. Met. Life Ins. Co.*, 119 Pa. Super. Ct. 176,
180 At. 727; *El Paso Electric Co. v. Cannon*, (Tex. Civ.
App.) 69 S. W. (2d) 532; *United States v. Monger*, 70
F. (2d) 361; *Aetna Life Ins. Co. v. Wyant*, 249 Ky. 562,
61 S. W. (2d) 50; *Loffland Bros. v. Morgan*, 153 Okl.
295, 5 P. (2d) 1067.

From the length of time elapsing since plaintiff's
injury, during all of which the same condition has per-
sisted, it requires no doctor to tell us that in all prob-
ability such injuries are permanent. In fact, as to the
injury to plaintiff's back the commission has found
it to be permanent.

■ The jury was justfied in concluding that there
was but one injury, that is to say, the injury to plain-
tiff's back. As it appears to the writer, there were three
results of that injury, the first being spasticity of the
muscles, the second, numbness of the leg, and the third,
urinary incontinence. Dr. Poyntz explained the first
as being an effort on the part of the muscles to protect
"the sore, inflamed and painful" injury. Evidently,
the second and third results, namely, numbness of the
leg and incontinence of the urine were caused by ab-
normal pressure on some part of the spinal cord. It
is common knowledge as well as one of the laws of
nature that such pressure will produce paralysis of
the sphincter muscles of the bladder.

Extended litigation about such a claim as this serves
in a large measure to defeat the purpose of the law
upon which it is based.

We think that the award made by the circuit court is supported by the evidence. We think also that under the liberal rule of construction, which we apply for the reason stated, the complaint also supports the judgment. Without approving the manner in which the issues were submitted to the jury or commending plaintiff's initial pleading on appeal to the circuit court, we think that the judgment of the circuit court should be affirmed, and it is so ordered.

BAILEY and ROSSMAN, JJ., not sitting.