Argued February 23, affirmed March 21, 1950

## GILMAN *v.* BURLINGHAM
216 P. (2d) 252

*Herbert C. Hardy,* of Portland, argued the cause for appellant. With him on the briefs were Cake, Jaureguy & Tooze, of Portland.

*Warren A. McMinimee,* of Tillamook, argued the cause for respondent. With him on the brief was J. S. Bohannon, of Tillamook.

Before LUSK, Chief Justice, and BRAND, BAILEY, HAY, and LATOURETTE, Justices.

LATOURETTE, J.

This is an appeal by defendant from a judgment entered against him in the amount of $6,500.00 for injuries received by plaintiff in an accident involving the truck of defendant and the automobile of plaintiff at the intersection of Highways 101 and 53 at a point commonly known as "Mohler Junction", a short distance north of Wheeler, Tillamook County, Oregon. The plaintiff charged defendant with negligence as follows:

"2. That defendant drove and operated his oil truck on his left or wrong half of the highway onto plaintiff's right hand lane, forcing plaintiff off said main-traveled portion of the highway into the bridge, thence forcing plaintiff's said automobile over on its side.

"3. In failing to keep his truck under control.

"4. In failing to keep a proper or any lookout for other vehicles on said highway and particularly plaintiff."

As to the injuries sustained, plaintiff alleged:

"That as a direct result of said collision plaintiff suffered severe, painful and permanent injuries in and about plaintiff's neck, back and spine. That plaintiff sustained an abrasion over her right eye and a contusion on the right side of the head. *That her kidneys were affected.** (*Inserted by interlineation at the trial after both parties had rested.) That plaintiff's entire nervous system has been permanently affected and shattered. * * *"

Defendant, after certain admissions and denials, pleaded a separate answer to the effect that plaintiff carelessly operated her Ford sedan, that she ran the same into and against the railing of the bridge and turned over on said bridge. The reply denied the allegations in the separate answer.

The first three assignments of error are grouped together by defendant as they all concern "* * * one matter, a swelling of the respondent's body about six weeks after the accident."

Plaintiff's witness, Witt, testified on the subject as follows:

"Q. What can you describe her condition as you saw her then?

"A. Well, she was ill that evening so she stayed all night and that next day she started swelling, she started swelling up so much she had to let some of her clothes out, she had to let her support out as far as she could get it, she borrowed a pair of my house slippers to put on, her feet was swollen.

"Q. How long did you say she stayed there?

"A. Approximately a week.

"Q. About this swelling, what parts of her body were swollen?

"A. Her whole body was swollen.

"Q. How much was it?

"A. Well, it was very noticeable.

"Q. How about her face?

"A. It was very swollen.

"Q. Did it go down any during the week she was there?

"A. It did towards the last of the week, then I took her home.

"* * *

"Q. Had you observed any of these things that you have just told about during that week about her, prior to this time when you had seen her prior to that accident?

"A. No."

Defendant moved to strike out the above testimony as follows:

"MR. HARDY: If the court please, I think I will move to strike out all this testimony of this witness

as in no way indicating that this swelling was, on this particular date as a result of this accident.''

Plaintiff's husband testified:

''Q. Now, after she came back from a trip to the doctor, I think there was some testimony about her swelling, did you have occasion to observe that?
''A. Yes.

''Q. When was that?
''A. That was the second trip we went to Chuinard's office.

''Q. What was her condition following that?
''A. She stayed swelled out for some time but it gradually went down.''

Defendant objected to the above in the following language:

''MR. HARDY: May I have another exception Your Honor, to this type of questioning which you over-ruled once before about this swelling as being part of this accident?
''THE COURT: Yes.
''MR. HARDY: Because there is no connection with that in the first testimony nor here either.
''THE COURT: The Court has admitted it, you may have an exception to the Court's ruling.''

The third assignment goes to the failure of the court to give the following instruction requested by the defendant:

''There is evidence in this case that at some period of time after the accident the plaintiff had a swelling of various parts of the body for approximately a week, but you are instructed that there is no substantial evidence in this case that such a condition was caused by this accident, and therefore you will disregard the same and allow no damages therefor.''

It will be observed that defendant's objections were confined to the proposition that the swelling was in no way connected with the accident.

The defendant contends that the swelling was occasioned by novocaine injections given by plaintiff's physician approximately six weeks after the accident. He states in his brief:

> "It thus becomes clear that the swelling of the respondent as an item of damage was separate and distinct from the injuries claimed in the complaint and was not a symptom nor in any way connected with the alleged injuries, except by treatment."

The evidence is that plaintiff went to her doctor for treatment after the accident, and during the course of the treatment, he gave her novocaine injections, after which she suffered a swelling of parts of her body.

It is the law with respect to compensatory damages that a tort-feasor is liable to the person injured for all the natural and direct proximate consequence of his wrongful act or omission.

It is said in *McDonough v. National Hospital Ass'n. et al,* 134 Or. 451, 460, 294 P. 351:

> "At common law it is well settled that in an action for a personal injury a party may recover for injuries resulting from the defendant's negligence even though such injuries are aggravated by the mistaken but honest treatment of a physician.
>
> \* \* \*
>
> "One of the reasons which the courts assign for holding the wrongdoer responsible in a common-law action for the negligence of a physician whose unskillful treatment aggravated the injury is that such unskillful treatment is a result which reasonably ought to have been anticipated by the wrongdoer. But the principal reason and the one most gen-

erally assigned is that the injury caused by the malpractice would not have occurred but for the original injury and was a proximate result thereof, which is in law regarded as one of the immediate and direct damages resulting from the primary injury.''

■ ■ The court committed no error in permitting the evidence regarding the swelling to remain in the case and in failing to give the requested instruction.

The fourth assignment of error is directed to the testimony of plaintiff's witness, Foree. The following occurred at the trial:

''Q. How long were you there?
''A. I believe I was there four days.

''Q. Did you see her after that?
''A. Yes. During that time she had considerable trouble with her kidneys, that is, it would be possibly all day and all night and half the next day that her kidneys wouldn't function.

''MR. HARDY: Your honor please, I don't want to prevent anybody from telling all about this trouble, but I must enter an objection to this line of testimony because there is nothing, we have no opportunity to know whether or not she was going to allege kidney trouble—that can come from any number of troubles, therefore, I object to this line of testimony unless Mr. McMinimee wants to amend his complaint to allege that as a result of this accident she suffered kidney trouble so I can have an opportunity to ask his doctor in connection with it.

''THE COURT: I will over-rule the objection and permit the testimony to go in.

''MR. McMINIMEE: If the court please, I might call the court's attention that I didn't ask a question about that, I think she volunteered that, but I am going to ask her about the next question

about wetting the bed, which gets around to the same thing.

"THE COURT: There is no specific allegation of that kind in the complaint.

"MR. McMINIMEE: No, just a general allegation.

"MR. HARDY: May I have my exception noted as continuing to this line of testimony?

"THE COURT: Yes.

"Q. (Mr. McMinimee) Will you describe what you observed about it?

"A. On this score?

"Q. Yes.

"A. I was taking care of her, I would offer her a bedpan, she would go a day and a half at a time without the use of it; when the time came that they did function, it seemed we just didn't know, there was no control, we kept pads in her bed all the time I was there."

It will be noted that defendant's objection was directed to the absence in the complaint of an allegation that plaintiff had kidney trouble, and he further asked to have an "exception noted" continuing to this line of testimony. Under the defendant's fourth assignment of error contained in his brief, his points and authorities do not coincide with the objections made by him at the trial but are confined to the lack of qualifications of Foree, a lay witness, to testify to matters calling for expert medical opinion.

■ Since the defendant did not raise the objection in the lower court that he now urges here, this assignment of error cannot be considered.

■■ The fifth assignment of error is directed to the court's permitting plaintiff to amend her complaint at

the conclusion of the trial by inserting the following: "that her kidneys were affected." In the first place, defendant in his objection to this line of testimony suggested an amendment to the pleadings by the plaintiff, and it ill behooves him at a later time to object to such amendment. In the second place, plaintiff herself and her husband testified that plaintiff had no control of her kidneys, and that pads had to be put on the bed so that she would not wet the bed. Such testimony was given without objection on the part of the defendant and without any motion to strike the same, and therefore, such evidence, being a part of the record, has probative value. *Egli v. Hutton et al,* 135 Or. 175, 178, 294 P. 347. If such evidence was of a substantial nature, the court had the authority to permit the amendment to conform to the proof. *Lamb v. Woodry,* 154 Or. 30, 39, 58 P. (2d) 1257, 105 A. L. R. 914.

However, it is contended that there was no substantial evidence of a kidney ailment to warrant an amendment since lay witnesses were not qualified to testify to a matter about which only an expert could have knowledge.

Throughout defendant's brief, defendant treats such kidney trouble as if there was a claim on the part of the plaintiff that there was an injury to the kidneys. We believe this construction is too strict and narrow. The organs of a person's body may be affected in many ways directly or indirectly. It is well known that fright, excitement or a nervous condition following a back or spine injury oftentimes affect the kidneys to such an extent that a party may have incontinence of urine. Funk and Wagnalls dictionary defines "affect" as follows: "to have an effect upon; act upon; lay hold

of; impress; influence; change; as, worry affects the mind.''

■■ The evidence did not go so far as to imply that the kidneys were injured or damaged, merely *affected.* The testimony concerning plaintiff's kidney trouble was in all instances employed with respect to plaintiff's urinary incontinence. Such allusion to kidney trouble was typically a layman's description in a rough, general way of urinary incontinence. It is the law that in a case of this kind a lay witness may testify to his observations of the external manifestation of a person's physical condition. *Shaw v. Pacific Supply Cooperative et al,* 166 Or. 508, 513, 113 P. (2d) 627. In the somewhat similar case of *Wilson v. State Industrial Accident Commission,* 162 Or. 588, 599, 94 P. (2d) 129, the court said:

> ''As to the injury to plaintiff's back, it requires no doctor to testify to plaintiff's inability to normally flex his body and to the pain he suffers in that region when he is shaken or jarred. As to his urinary affliction, no doctor need be called to tell us how it affects plaintiff. Plaintiff himself knows more about it than anyone else. Of course, because plaintiff is not a physician, he is not qualified to express an opinion on the matter; but certainly he is a competent witness as to the state of his health with respect to those maladies familiar to laymen. * * * The jury was justified in concluding that there was but one injury, that is to say, the injury to plaintiff's back. As it appears to the writer, there were three results of that injury, the first being spasticity of the muscles, the second, numbness of the leg, and the third, urinary incontinence. * * * Evidently, the second and third results, namely, numbness of the leg and incontinence of the urine were caused by abnormal pressure on some part of the spinal cord. It is common knowledge as well as

one of the laws of nature that such pressure will produce paralysis of the sphincter muscles of the bladder.''

For the above reasons, this assignment of error is without merit.

The sixth assignment of error goes to the failure of the court to give the instruction requested by defendant, i.e., ''the jury should disregard the evidence in the case in connection with the kidney ailment.'' This assignment of error is without merit because of our ruling on the former assignments of error touching this matter.

■ The seventh and eighth assignments of error are directed to the failure of the court to give instructions taking from the jury the allegations in regard to keeping ''a proper or any lookout'' and ''his truck under control''. The court instructed the jury that it could consider the above allegations in arriving at its verdict, and there was no exception taken by the defendant in the giving of such instructions. It argued that since there was no impact between the vehicles, if defendant's truck was not on the wrong side of the road, lookout and control could not possibly have caused the accident. Since the overwhelming weight of evidence is that the defendant's truck was on its wrong side of the road, such instructions, if erroneous, were not prejudicial and did not substantially affect the rights of the defendant. § 1-1011, O. C. L. A.

There being no error in the record, the judgment is affirmed.