Argued March 6, reargued May 3, affirmed June 12,
petition for rehearing denied July 30, 1963

# STRANDHOLM *v.* GENERAL CONSTRUCTION
# COMPANY

382 P. 2d 843

146

*Leo Levenson,* Portland, argued the cause for appellant. With him on the briefs were William H. Poole, and Phillips, Poole & Dooley, Portland.

*Philip A. Levin,* Portland, argued the cause for respondent. With him on the brief were Frank Pozzi, and Pozzi, Levin & Wilson, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

SLOAN, J.

Plaintiff, a longshoreman, was injured as a result of the collapse and fall of a large marine boom at a place where plaintiff was then employed. Defendant-appellant, General Construction Company, was not plaintiff's employer. Prior to the accident defendant had remodeled the boom; installed the boom in its place of use and rerigged the lines and gear necessary for the operation of the boom. Plaintiff claimed that defendant had negligently done so. The jury returned a verdict for defendant. The trial court thereafter sustained plaintiff's motion for a new trial. Defendant appeals. Other defendants were involved in the trial of the case but were eliminated on motion for nonsuit. This appeal is a contest only between plaintiff and General Construction Company and they will be referred to as plaintiff and defendant.

Another of the assignments of error brought here is that the court should have allowed defendant's motion for a directed verdict. A statement of the facts is necessary to clarify this and other issues presented on this appeal.

At the time of the accident plaintiff was employed by the Louis Dreyfus Company, an importer and exporter of grain. A part of the facilities of Dreyfus Company was a dock where grain was loaded and un-

loaded from barges and ships. The latter process was accomplished by use of the boom in question. The boom, at the lower end thereof, was secured to the base of a mast. The top of the boom was rigged to the top of the mast by lines which permitted the boom to be raised and lowered in the usual way. These lines and rigging consisted in part, of course, of large blocks through which the lines were passed. The raising and lowering of the boom was controlled by drums and brakes to which the lines extended. The boom was used to raise, lower and control a large device designated as a marine leg. By use of the boom the marine leg was lifted into and out of the holds of the ships and barges and the marine leg moved the grain in or out of the hold of the ship or barge.

Several months prior to the accident the Dreyfus Company caused the boom and mast to be substantially lengthened. Designs for this alteration in the boom and mast were prepared by an engineering concern. Defendant contracted to install the boom, mast and rigging after the boom and mast were enlarged. There was evidence to show that defendant had the responsibility to inspect the pre-existing gear and rigging and, upon installation of the altered boom and mast was either to utilize that which had been used before or install different equipment. Defendant completed the alteration of the boom and mast and did install all of the rigging necessary for its operation. It should be obvious that this gear was intended to accommodate loads of several tons in weight.

The part of the rigging with which we are immediately concerned was a block at the top of the boom. Lines which passed through this block to the top of the mast controlled the raising and lowering of the boom. This block was secured to the end of

the boom by the use of a pin. The pin was described as being about five inches long and about an inch or an inch and a quarter in diameter. There were flanges or "cheeks" on each side of the block and the pin secured the block to the mast by the common means of inserting the pin through holes in these flanges or "cheeks" of the block and through a hole of a similar flange fastened to the top of the boom. One end of the pin had a flat head which secured it in place. The other end of the pin was secured with a cotter key.

The block and pin were a crucial part of the installation. The method of their installation presents the key issue in this case. Plaintiff had alleged, and presented evidence to show, that the accident was caused when this pin failed to remain in place and that when the pin came out of place it caused the collapse of the boom. Plaintiff's evidence could be said to establish that the use of a cotter key to secure the pin was inadequate and negligent. The evidence would also show that by proper rigging the pin should have been secured by the use of a castellated nut and that the castellated nut should then have been secured by a cotter key. The accident occurred about six months after defendant had completed its work on the boom.

To complete the story of the accident it should be mentioned that plaintiff was not injured by the fall of the boom itself. He was caught by one of the writhing lines and thrown to the lower deck of a barge which was being unloaded at the time. There could be no question but that the fall of the boom was the cause of his injury. In fact, we think that the evidence, above mentioned, was sufficient to factually establish a jury question as to negligence on the part of defendant. The real problem presented by the motion

for directed verdict is a legal one. Most directly stated the question is: Will this court apply the doctrine of *MacPherson v. Buick Motor Co.,* 1916, 217 NY 382, 111 NE 1050, to the relationship existing between these parties at the time of the accident? We think the answer is yes. But before we discuss our reasons therefor it is necessary to consider the reason assigned by the trial court for the grant of a new trial. If that reason is insufficient the case would end at that point.

■ Both Dreyfus Company and plaintiff, at the time of the accident, were subject to the Longshoreman's and Harbor Workers' Compensation Act. (33 USCA § 901.) Plaintiff received compensation accordingly. Both before and during the long trial the trial court had specifically admonished defense counsel that no mention should be made to the jury that plaintiff had received compensation. Nevertheless, defendant did. When defendant was presenting its case it called as a witness one Mr. Gilpin, the Assistant General Manager of defendant. One of the hotly contested issues in the trial of the cause was created by the loss, before trial, of the critical pin we have before described. When Mr. Gilpin was being examined in respect to this issue he gave the following testimony:

"Q [By defendant's attorney] Do you know the pin that I have reference to?

"A Yes.

"Q Mr. Gilpin, now, did you have occasion to see that pin again subsequent to this date of October 9?

"A Yes, I did.

"Q When did that occur?

"A That occurred when the Dreyfus compensation insurance carrier and Mr. Aanderud came to our office."

Plaintiff's counsel immediately asked for a conference in chambers. The conference was had. In chambers Mr. Gilpin was further examined and gave this testimony:

Q (By plaintiff's attorney) "You didn't know it of your own personal knowledge, did you?
A "No.
Q "Who told you to say this on the witness stand, what you just said?
A "Our attorneys."

No denial was made as to the truth of that statement.

It is clear from the above that improper evidence was wrongfully injected into the case. It was done deliberately not only by defendant's counsel but by defendant itself. However, at that time plaintiff declined to move for a mistrial. The case proceeded to the conclusion before mentioned.

Later, in response to the plaintiff's motion for a new trial, the court ruled: "* * * Being of the opinion that there was misconduct and irregularity in the proceedings on the part of defendant General, which was prejudicial and prevented plaintiff from receiving a fair trial, * * *" a new trial was ordered. It might be well to add here that the alert trial judge saw fit to reproach defendant's counsel for other conduct engaged in during the trial.

■ The difficult decision is caused by plaintiff's failure to move for a mistrial. Did he waive the right to claim error? In a long line of decisions beginning with *Tuohy v. Columbia Steel Co.*, 1912, 61 Or 527, 122 P 36, this court has held that it will not disturb the trial court's exercise of discretion when a new trial or mistrial is allowed for the deliberate injection of insurance into the trial of a case. *Rosumny v.*

*Marks,* 1926, 118 Or 248, 246 P 723; *Wells v. Morrison et al,* 1927, 121 Or 604, 256 P 641; *Bennett v. City of Portland,* 1928, 124 Or 691, 265 P 433, and more currently in *Guthrie v. Muller,* 1958, 213 Or 436, 325 P2d 883. The doctrine is so well established that reference to other cases is not necessary. We think those cases are apposite here. If a mistrial had been asked for and allowed no one could possibly have questioned the trial court's authority to do so. As indicated, we are more concerned by the failure of plaintiff to demand a mistrial.

■ However, an examination of our cases shows that a party does not irretrievably lose his right to move for a new trial by failure to act when the error occurs. In *Neal v. Haight,* 1949, 187 Or 13, 32, 206 P2d 1197, 1205, the court, by Justice BRAND said:

> "We hold that error waived by failure to object or invited does not thereby impair the inherent judicial power to grant a new trial if prejudicial error has occurred in the proceedings. We have held that this court will affirm an order for a new trial if good cause exists, even though the motion therefor does not correctly specify the grounds for the motion, and that we may affirm for reasons different from those specified in the order of the trial court. King v. Titto, 142 Or. 207, 19 P.(2d) 1100; Johnson v. Updegrave, 186 Or. 196, 206 P.2d 91."

In addition to the cases just cited in the quotation, see *Lyons v. Browning et al,* 1943, 170 Or 350, 354, 133 P2d 599, 600. In *Lyons* the court said: "* * * one of the purposes of the new trial statute is to enable the trial judge to correct errors and to cure miscarriages of justice, notwithstanding the failure of counsel to make a record which would authorize this court to reverse

the judgment on appeal." This distinction was more fully expressed in *Timmins v. Hale,* 1927, 122 Or 24, 32, 256 P 770, 773:

> "'* * * In respect to the necessity of there having been a ruling in the lower court and an exception taken which is requisite to a reversal upon appeal, there is a clear and well-recognized distinction between the power of the trial court on the one hand to set aside a judgment and grant a new trial, and the power of the Supreme Court to reverse a judgment upon appeal, for it has been repeatedly held by this court, that it is not error alone, but error legally excepted to that constitutes grounds for reversal: Maddox v. McHatten, 111 Or 324 (224 Pac. 833, 226 Pac. 427), and authorities there cited."

A dissenting opinion in *Fischer v. Howard,* 1954, 201 Or 426, 468, 469, 271 P2d 1059, 1077, 1078, 49 ALR2d 1301, by Justice Lusk had this to say about the instant problem:

> "'* * * We have many times held that the trial court has discretion to set aside a judgment and order a new trial for prejudicial error notwithstanding the failure of counsel to call the matter seasonably to the attention of the court and obtain a ruling. Neal v. Haight, 187 Or 13, 32, 206 P2d 1197; Lyons v. Browning, 170 Or 350, 354, 133 P2d 599; Timmins v. Hale, 122 Or 24, 32, 256 P 770; Spokane County v. Pacific Bridge Co., 106 Or 550, 553, 213 P 151; Archambeau v. Edmunson, 87 Or 476, 487, 171 P 186."

Although in a dissent, we think this statement would not be in conflict with the majority opinion in the *Fischer* case.

■ One of the more interesting cases on this subject is *Veazie et al v. Columbia Etc. R. R. Co.,* 1924, 111 Or 1, 224 P 1094. The opinion by Chief Justice

McBride, quotes from a memorandum made by the trial judge. The latter relates that:

"* * * Juror Warner [Wagner] has asked several questions and interrupted counsel several times during the trial. During an interval in the course of the trial he asked defendant's counsel that certain evidence be produced. This incident was promptly and properly reported to the court and to opposing counsel. The evidence requested was inadmissible and the incident was permitted to pass without comment. During the final argument by plaintiffs' counsel and while he was discussing the evidence of one of the witnesses for plaintiffs, the same juror raised his hand in a deprecating manner and said in effect, 'Don't talk to me about M.M. and L. (plaintiffs' witnesses). [They] are so crooked they could not lie straight in bed.' My attention was momentarily diverted and I did not clearly understand the remark of the juror, but it was evidently clearly understood by the other jurors. Counsel for plaintiffs did not move to have the jury discharged. Counsel was visibly surprised and embarrassed by these remarks, and after a brief hesitation proceeded with the argument. He was placed in a difficult situation, where he had to decide promptly." 111 Or 2, 3, 224 P 1094, 1095.

The trial court in the *Veazie* case ordered a new trial despite the failure of counsel to have asked for a mistrial. In affirming the order for a new trial this court held (111 Or 6) that Section 3, Article VII of the Oregon Constitution did not deprive the trial courts of their common law power to order a new trial because of misconduct of a party or juror even if the injured party does not make an objection or move for a mistrial when the error occurs. This doctrine of the *Veazie* case has been ratified as recently as *Hays v. Herman,* 1958, 213 Or 140, 147, 322 P2d 119, 69 ALR2d 947. For a further elaboration of Justice McBride

on the common law power of a trial court to order a new trial see his opinion on a petition for rehearing in *De Vall v. De Vall,* 1912, 60 Or 493, 501, 118 P 843, 120 P 13.

We cannot say that the trial judge abused either its common law or statutory power when he granted a new trial in this case.

We return now to the motion for directed verdict. In doing so it is necessary to first consider *Welter, Adm'x v. M & M Woodworking Co.,* 1959, 216 Or 266, 273, 274, 338 P2d 651, 655. The opinion in *Welter* uses this language emphasized in defendant's brief:

"* * * In some it appeared that the work had been accepted and turned over to the owner. Thornton v. Dow, 60 Wash 622, 111 P 899, Ryan v. Feeney & Sheehan Building Co., 239 NY 43, 145 NE 321, 41 ALR 1. In such circumstances, the contractor is not held liable for injury to a third party due to some defect in the work, even though he was negligent in carrying out the contract (65 CJS 613, Negligence § 95b), because his right to exercise control over the work and his duty to correct defects have ceased and his negligence is not considered the proximate cause of the injury, but rather the negligence of the owner, upon whom has devolved the duty to make the work safe. Smith v. Claude Neon Lights, Inc., 110 NJL 326, 164 A 423; Casey v. Bridge Co., 114 Mo App 47, 89 SW 330; Canal Construction Co. v. Clem, 163 Ark 416, 260 SW 442, 41 ALR 4, Anno. p 8, 15."

That statement was immaterial to the decision in the *Welter* case. It is not controlling on our decision now. We deem the solution to the problem presented here to be an open one in this court.

■ It is now the generally accepted view that the liability of a contractor is the same as that specifically

imposed upon a manufacturer by *MacPherson v. Buick Motor Co., supra,* 217 NY 382. Study of the *MacPherson* opinion causes wonder that there could have been so much question as to the application of the doctrine announced by the *MacPherson* case to persons who were not manufacturers in the strict sense of the word. See Annotation, 58 ALR2d 865. The decision in *MacPherson* was, in good measure, based upon the earlier case of *Devlin v. Smith et al,* 1882, 89 NY 470, 42 AR 311. In *Devlin* the defendant was a person who contracted to build a scaffold for a painter and it was held there was a liability from the contractor to an employee of the painter. Such a contractor was not a manufacturer. In the concluding portion of the *MacPherson* opinion, Judge Cardozo stated:

> "There is nothing anomalous in a rule which imposes upon A, who has contracted with B, a duty to C and D and others according as he knows or does not know that the subject-matter of the contract is intended for their use. We may find an analogy in the law which measures the liability of landlords. If A leases to B a tumbledown house he is not liable, in the absence of fraud, to B's guests who enter it and are injured. This is because B is then under the duty to repair it, the lessor has the right to suppose that he will fulfill that duty, and, if he omits to do so, his guests must look to him (Bohlen, supra, at p. 276). But if A leases a building to be used by the lessee at once as a place of public entertainment, the rule is different. There injury to persons other than the lessee is to be foreseen, and foresight of the consequences involves the creation of a duty (Junkermann v. Tilyou R. Co., 213 N. Y. 404, and cases there cited)." *MacPherson v. Buick Motor Co.,* 1916, 217 NY 382, 393, 394.

It is difficult to see any distinction between a per-

son who manufactures goods of a particular kind for general sale to the public, such as an automobile manufacturer, and one who builds or manufactures a particular chattel made for a precise use. In fact when one builds for a particular use and knows how and by whom the product will be used the matter of foreseeability would seem to be more acute than would be true of one who manufactures for general use for many purposes. It appears futile to determine liability by attempting to find if a particular function were that of a contractor or of a manufacturer. No one could draw guidelines which would, for all purposes, describe and segregate the function of each. Common experience would teach that in a given instance each would be of the equivalent of the other. It would appear better to determine liability by conduct, not by a label to be attached to the actor.

In any event a person standing in the position of defendant in the instant case is now generally held to a liability for injury caused to third persons by his failure to safely build or manufacture. The older doctrine that the lack of privity of contract between the contractor and the third person bars responsibility of the contractor to the third person is no longer the prevailing theory. Prosser, The Law of Torts, (2d ed., 1955), § 85, 514, et seq; 2 Harper & James, The Law of Torts, 1956, Chapter 28; *Hanna v. Fletcher,* CADA 1956, 97 App DC 310, 231 F2d 469, 58 ALR2d 847, certiorari denied June 11, 1956, 351 US 989, 76 S Ct 1054, 100 L Ed 1502; 2 Restatement, Torts, § 404. And see the exhaustive opinion in *Foley v. The Pittsburgh-Des Moines Co.* 1949, 363 Pa 1, 68 A2d 517. In an earlier case before this court, *Stout v. Madden & Williams,* 1956, 208 Or 294, 300 P2d 461, Justice PERRY made an extensive analysis of much of the

authority just mentioned. It was decided in the Stout case that it was not then necessary to decide if the rule of non-liability of one person to another not in privity existed in Oregon. However, the opinion did recognize that the doctrine of *MacPherson* now has general acceptance. We now hold that the lack of privity doctrine does not apply and that the doctrine expressed in the still unsurpassed language of *MacPherson v. Buick Motor Co.* will apply.

■ It appears, in fact, that defendant here places greater reliance upon its argument that the alleged negligence of the Dreyfus Company was an intervening cause than on its argument as to the continued existence of the privity of contract rule. In this, too, we think more cogent, if not the prevailing authority, compel us to deny defendant's contentions.

2 Harper & James, The Law of Torts, *supra,* at pages 1556, 1557, expresses the rule more generally followed in this way:

> "A few older cases invoked the generally discredited notion that the intervening negligence of a responsible wrongdoer insulates the maker from liability.* During the last hundred years, at any rate, this notion has enjoyed no general acceptance."

> \* \* \* \* \*

> "In the case of builders and other contractors in construction work, a rule once prevailed that exonerated the contractor for injuries to third persons caused by defective construction but occurring after the employer had accepted the work.* This will be recognized as an offspring of the privity rule and the last-wrongdoer rule. Both lines of holdings represent anachronistic and unwarranted exceptions to general negligence principles and are being progressively repudiated by the courts.*"

(Footnotes omitted).

Judge Medina, when on the Second Circuit, in *Fredericks v. American Export Lines,* (2d Cir USCA 1955), 227 F2d 450, 453, 454, a case similar to the instant case, provided this answer to the question:

> "It is elementary that the concurrent negligence of some third person will not absolve a defendant upon whom liability is sought to be imposed for the consequences of his own delict. Could the jury here, on the evidence before it, have properly found that the flow of causation, arising from the negligent fabrication of the skid iron by Farrington, was broken by McGrath's failure to discover the defect?"
>
> \* \* \* \* \*
>
> "That the intervening purchaser will remain passive or otherwise fail to do what he ought to do to prevent the course of events, is a reasonably foreseeable consequence of the original wrongdoing. Moreover, this is not a distinction based upon mere passivity but rather upon whether or not the ultimate fact or occurrence is reasonably foreseeable. This is a far cry from the doing of something or the refraining from doing something constituting an improbable, independent, intervening cause, which is a superseding cause and breaks the sequence. Perry v. Rochester Lime Co., 219 N.Y. 60, 113 N.E. 529, L.R.A. 1917B, 1058; Ford Motor Co. v. Wagoner, 1946, 183 Tenn. 392, 192 S.W.2d 840, 852, 164 A.L.R. 364; Prosser, Torts, § 49 (1941)." 227 F2d 454, at pages 453 and 454.

In the same opinion Judge Medina also gives answer to the contention made by defendant here that the Dreyfus Company's use of the boom for six months absolved defendant of liability:

> "\* \* \* A bomb is nonetheless deadly if it contains a time mechanism. On the other hand, evidence of the passage of time, together with that of other attendant circumstances, is admissible, in order that a jury may not be led astray. The mere pas-

sage of time confers no immunity upon a negligent wrongdoer; but it has relevance to the likelihood, depending upon the circumstances of a particular case, that deterioration due to use, perhaps accelerated by misuse, will be mistaken by a jury for a defect due to negligent manufacture or fabrication. On the evidence before us in this case, we cannot say the jury went beyond permissible and rational inference in attributing the accident to Farrington's negligent fabrication of the skid iron, which cracked and came apart, despite at least two and one-half years of apparently safe use and normally rough handling." 227 F2d at page 452.

The opinions in *Foley v. The Pittsburg-Des Moines Co., supra,* 363 Pa at page 26 and *Alexander v. Nash-Kelvinator Corporation,* (2d Cir USCA 1958), 261 F2d 187, arrive at the same conclusions as Judge Medina in much the same language. We think the rule applied by these cases is not unlike that which holds the original wrongdoer liable for the later malpractice of an attending physician. *Gilman v. Burlingham,* 1950, 188 Or 418, 216 P2d 252.

Section 452, 2 Restatement, Torts, provides:

"Failure of a third person to perform a duty owing to another to protect him from harm threatened by the actor's negligent conduct is not a superseding cause of the other's harm."

The above citation to case law and texts, and the material cited therein, provides an adequate resume of the authority we follow in this case. We cannot say, as a matter of law, that any of the alleged omissions of Dreyfus Company avoided the legal liability of defendant.

It would not be amiss to here indicate from the testimony of Mr. Gilpin, the aforementioned responsible

officer of defendant, what defendant considered its
duty to be when it installed this boom and rigging:

"Q You were going to do that, then you were
to pick up the mast and barge it to Gunderson
Bros. and then you were going to bring it back to
the Dreyfus Company, the Globe Dock?
"A Yes.

"Q And when you got it back, you proposed to
place the new mast, boom, and rigging up ready to
operate; is that right?
"A That's what it says.

"Q And that means put it back up properly so
it could be operated properly, correct?
"A Correct.

"Q Right, and safely?
"A Correct."

■ It was for the jury to decide if defendant negli-
gently performed this duty and if so did any of the
alleged later failures if any, of Dreyfus Company
eliminate all liability for that negligence. The court
did not err when it denied the motion for directed
verdict. Judgment affirmed.

ROSSMAN, J., dissents.