Lester SMALL, Plaintiff-Appellant,

v.

OLYMPIC PREFABRICATORS, INC., a
Washington Corporation, Defendant
and Third Party Plaintiff-Appellee,

v.

HARBOR MECHANICAL, INC., Schuc-
hart Industrial Contractors, Inc., and
Howard S. Wright Const. Co. d/b/a
Wright-Schuchart-Harbor, Third-Party
Defendants-Appellees.

Lester SMALL, Plaintiff,

v.

OLYMPIC PREFABRICATORS, INC., a
Washington Corporation, Defendant
and Third-Party Plaintiff-Appellee,

v.

HARBOR MECHANICAL, INC., Schuc-
hart Industrial Contractors, Inc., and
Wright-Schuchart-Harbor, and Howard
S. Wright Const. Co., Third-Party De-
fendants-Appellants.

Joyce G. ABBOTT, Administratrix of the
Estate of Stanley Buffington,
Deceased, Plaintiff-Appellee,

v.

OLYMPIC PREFABRICATORS, INC., a
Washington Corporation, Defendant
and Third-Party Plaintiff-Appellant,

v.

HARBOR MECHANICAL, INC., Schuc-
hart Industrial Contractors, Inc., and
Howard S. Wright Const. Co. d/b/a
Wright-Schuchart-Harbor, Third-Party
Defendants-Appellees.

Nos. 76–2629, 76–2851 and 76–2675.

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1978.

Charles Paulson, Elden N. Rosenthal, Portland, Or., for plaintiffs-appellants.

Walter J. Cosgrave, Portland, Or., for defendant and third party plaintiff-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Small and Buffington were injured in an industrial accident on a construction job.

Buffington has since died and the administratrix of his estate joins with Small in this appeal from the denial of motions for mistrial and new trial. The motions followed statements, heard by the jury, referring to workmen's compensation insurance. The appellants challenge also the reference of the case to a United States Magistrate.

An appeal has also been taken by Olympic Prefabricators, Inc. (Olympic) from a summary judgment which denied its claim for indemnity from third party defendants Harbor Mechanical, Inc., Schuchart Industrial Contractors, Inc., and Howard S. Wright Construction Co., d/b/a Wright-Schuchart-Harbor (Harbor). Harbor cross appeals from the denial of its request for attorney's fees.

We affirm the denial of a mistrial and new trial and reject the claim of error as to referral to the Magistrate. It is unnecessary to consider Olympic's appeal. We affirm the denial of attorney's fees to Harbor.

## I.

### FACTS

A. *Small and Abbott v. Olympic.*

Small and Buffington, employees of Harbor, were injured when a prefabricated building purchased by Harbor from Olympic collapsed during construction. Being unable to sue Harbor directly because of the exclusive remedy of Oregon's Workmen's Compensation Law, Or.Rev.Stat. 656.001 *et seq.*, they brought this diversity action against Olympic. The parties stipulated to a jury trial before a United States Magistrate.

In his opening statement, counsel for Van Egdom, a co-plaintiff below but not party to this appeal, referred to workmen's compensation payments received by his client.[1]

___

* Senior District Judge for the District of Montana.

1. "His wage loss actually compared to the extent of the injury is comparatively small, because all during the time Mr. Van Egdom was in the hospital, his employer paid him his salary, less the amount of the compensation that he received. He has to pay the compensation back, so actually his wage loss is just the compensation that he received for that time and a couple short periods when he was in between these jobs that he had to quit

Van Egdom also gave direct testimony about such payments.[2] On cross-examination, defendant's counsel referred to workmen's compensation in an attempt to impeach Van Egdom.[3] On the next day, defendant's counsel again referred to workmen's compensation in his cross-examination of Dr. Knox, one of Van Egdom's physicians.[4]

Counsel for Small and Abbott did not object to these statements. Only later on the second day of trial did they join Van Egdom's counsel in a motion for mistrial based upon the cross-examination of Dr. Knox. A motion for new trial on the same grounds was made after a jury verdict of no liability for Olympic. The court denied all of the motions.

**B.  *Harbor v. Olympic.***

The contract between Harbor and Olympic provided that Olympic furnish all draw-

---

because they were too strenuous for him." (Tr. 15–16)

2.  "[Mr. Evans] Now, going back to your work record, as I understand it, your employer paid your wages continuously since the day of the accident—Wright Company—until you terminated with them, except for the amount of compensation you received?
[Mr. Van Egdom] I'd like to elaborate on that.
Q  Would you please?
A  Wright, Schuchart-Harbor paid my salary, less workmen's compensation, for my five weeks that I was not able to be on the job site. However, after the fifth week they had a high-rise job going in Olympia, and I started that job in my sixth week of injury with a full leg cast, and they paid my salary less, again, the compensation." (Tr. 106)

.    .    .    .    .

"Q  As I understand it from your testimony, as far as wage loss, the only wage loss you really sustained is the compensation that you're going to have to pay back out of any recovery, plus the one month that you were off between those jobs while you were looking for another, and essentially, you received your full salary?
A  That's correct, sir.
MR. EVANS: Counsel has also agreed to stipulate that the amount of compensation was paid him for wage loss, which he will have to reimburse in the amount of recovery is $48.94.
MR. COSGRAVE: Yes, but he has no obligation to pay unless there is a recovery.
MR. EVANS: That's right. If there is a recovery and, of course, they don't admit liability.
MR. COSGRAVE: So stipulated without any admission of liability for those amounts." (Tr. 112–13)

3.  "[Mr. Cosgrave] I will ask you, Mr. Van Egdom, if you remember when you were questioned by Mr. Schroeder who was questioning you in connection with your compensation claim against your employer? Remember Mr. Schroeder interviewed you by telephone?

[Mr. Van Egdom] I have never, to my recollection, ever met the man, no, sir.
Q  But you remember back on March 23rd of 1972 when you were interviewed over the telephone, did you not, sir?
A  I have had an interview over the telephone, sir." (Tr. 123)

.    .    .    .    .

"Q  You have told us that after this accident occurred, then you had no loss because you had your compensation benefits because you were injured on the job, but your employer made up the difference during that time that you were off work.
A  I think that's a little confusing, sir. Let me explain this, if I may. The five weeks I was off, the *total*, I was two weeks in the hospital and three other weeks I was home, I received full pay from my employer, less the compensation which amounted to $85 a week. When I went to work up in Alaska on that high rise project, that status remained the same for approximately eight or nine *months. I'm not specifying a certain day. I* can't remember when the compensation portion just stopped and my employer picked up that gap again and made the total sum of the monthly salary.
Q  Whatever it was, you were fully paid?
A  Yes." (Tr. 124–25)

4.  "BY MR. COSGRAVE:
Q  Doctor, did you bring with you your complete file?
A  Yes, sir; I did.
Q  I wonder if you would hand it to the bailiff. Doctor, you did report in there to Mr. Evans, didn't you?
A  Yes, sir.
Q  That was in connection with his reopening of his compensation claim.
MR. EVANS: Objection on the grounds it's immaterial and irrelevant.
THE COURT: What is the relevancy of that?
MR. COSGRAVE: I think, Your Honor, it's been brought out previously in the case by the plaintiff. I will withdraw the question." (Tr. 217)

ings necessary for the construction of the building and an advisor during the first two days of work. Harbor was to supply all other labor. The collapse of the building occurred on the third day of construction, after Olympic had fulfilled its advisory obligation.

In a third party complaint against Harbor, Olympic alleged that the injuries to Small and Buffington were the result of Harbor's negligence in not following the directions for the building's construction. After Harbor's successful motion for summary judgment, Harbor applied for attorney's fees under the following indemnity clause in its contract with Olympic, wherein Olympic agreed

1. To indemnify and save harmless the contractor [Harbor] from and against any and all suits, claims, actions, losses, costs, penalties and damages of whatsoever kind or nature including attorney's fees arising out of, in connection with or incident to the subcontractor's performance of this subcontract.

The district court denied Harbor's motion, concluding that the third party complaint was not a suit or action arising from or in connection with Olympic's performance of its contract.

## II.

## DISCUSSION

A. *References to Workmen's Compensation.*

Or.Rev.Stat. § 656.595(2) provides:

(2) In any third party action brought pursuant to ORS 656.001 to 656.794, the fact that the injured worker or his beneficiaries are entitled to or have received benefits under ORS 656.001 to 656.794 shall not be pleaded or admissible in evidence.

Small and Abbott cite a number of cases applying Oregon law in which reference to workmen's compensation coverage constituted reversible error.[5] They rely particularly on *Strandholm v. General Construc-*

*tion Co.,* 235 Or. 145, 382 P.2d 843 (1963), to excuse their failure to object promptly to statements regarding workmen's compensation.

In *Strandholm,* plaintiff's counsel failed to object to statements elicited by defense counsel regarding workmen's compensation coverage until the end of trial. The trial court had specifically warned defense counsel not to introduce such evidence. Upon plaintiff's belated motion, the trial court granted a new trial. The Oregon Supreme Court affirmed.

Apart from the factual differences that distinguish that case from this, *Strandholm* does not support appellants' position. The Oregon court in that case merely confirmed a trial court's discretion to order a new trial even in the absence of an objection.

■ An appellate court applies a much different standard for ordering a new trial. Language from an earlier Oregon case cited by the court in *Strandholm* makes clear the distinction:

"In respect to the necessity of there having been a ruling in the lower court and an exception taken which is requisite to a reversal upon appeal, there is a clear and well-recognized distinction between the power of the trial court on the one hand to set aside a judgment and grant a new trial, and the power of the Supreme Court to reverse a judgment upon appeal, for it has been repeatedly held by this court that it is not error alone, but error legally excepted to, that constitutes grounds for reversal." (Citation omitted.)

235 Or. at 153, 382 P.2d at 846 (citing *Timmins v. Hale,* 122 Or. 24, 32, 256 P. 770, 773 (1927)). This is consistent with Fed.R.Evid. 103(a)(1), which requires a "timely objection" to preserve an assignment of error.

There was no timely objection here to references regarding workmen's compensation coverage. Small and Abbott did not object to the opening statement of Van Egdom's counsel, to Van Egdom's direct

---

5. *LeMade v. Wilson,* 168 U.S.App.D.C. 108, 512 F.2d 1348 (1975); *Burnett v. Hernandez,* 263 F.2d 212 (9th Cir. 1959); *Bibby v. Hillstrom,* 260 Or. 367, 490 P.2d 161 (1971).

testimony, or to his cross-examination by defense counsel. There was no immediate objection to the cross-examination of Dr. Knox. Only later on the second day of trial did they object.

Although the trial court, in its discretion, could have overlooked the untimeliness of the objection and ordered a new trial, it was not required to do so.

■ Small and Abbott assert that the denial of their motions for mistrial and a new trial was "plain error." Fed.R.Evid. 103(d) permits an appellate court to "tak[e] notice of plain errors affecting substantial rights", even in the absence of an objection. Or.Rev.Stat. 656.595(2) prohibits references to "the fact that *the injured work[man] or his beneficiaries* are entitled to or have received benefits" under workmen's compensation. (Emphasis added.) In each of the cases cited by appellants, reference was made at trial to the fact that the plaintiff-appellant had received benefits. Further, in each instance, defense counsel deliberately introduced statements regarding workmen's compensation without prior reference to the subject by plaintiffs.

Here, appellants are objecting to statements regarding receipt of benefits by Egdom. No statements were made concerning their own coverage under or receipt of payments from workmen's compensation. The subject was raised by co-plaintiff's counsel and pursued in his direct examination of Van Egdom. Defense counsel, who could justifiably believe that the subject had been legitimately opened, referred to workmen's compensation briefly in his cross-examination of Van Egdom and Dr. Knox.

The trial judge and a reviewing district judge found no prejudice to appellants by the statements. Apparently, Small and Abbott also were not fearful that the statements would affect the jury on the liability issue,[6] but only on the question of damages, which the jury never reached. We agree that the statements did not prejudice appellants and find no plain error affecting their substantial rights.

### B. *Use of a Magistrate.*

■ Appellants claim that a magistrate "has no power, either statutory or constitutional, to preside over a diversity jury trial." They are unable to cite any authority for this proposition.[7]

The only relevant case cited by appellants, *DeCosta v. Columbia Broadcasting System, Inc.,* 520 F.2d 499 (1st Cir. 1975), held that parties may constitutionally consent to try a civil matter before a Magistrate. The First Circuit discussed what standard of review should apply to a magistrate's opinion and concluded that "factual findings of the magistrate adopted by the district court [are] subject to the clearly erroneous standard of Rule 53(a), and . . . the legal decision of the magistrate [is] subject to the full review of this court." 520 F.2d at 509. *See also Campbell v. United States Dist. Court for the N. Dist. of Cal.,* 501 F.2d 196 (9th Cir.), *cert. denied,*

---

6. The following colloquy occurred between the trial judge and counsel for Abbott (Mr. McGeorge) and Small (Mr. Cornelius) after Van Egdom's counsel had moved for a mistrial:

"THE COURT: [The jury is] going to be told in the instructions if they find either strict liability or negligence, your client is going to get $25,000, no more no less.

MR. McGEORGE: That's right, but if they feel he has been compensated, they wouldn't know how much. As a matter of fact, he has been under Workmen's Compensation. This might work against his case.

THE COURT: On the liability angle?

MR. McGEORGE: No, on the damages.

THE COURT: They can't give him anything but $25,000 if they find in his favor on that liability. I'm going to so instruct if they find in favor of your client, they are to return a verdict of $25,000. Your motion is denied.

MR. CORNELIUS: I will also move on behalf of Plaintiff Small. We would also separately move for the same ground, and of course, in my case it would affect our measure of damages." (Tr. 225–26)

7. Small and Abbott refer to the legislative history of 28 U.S.C.A. § 636 (West Supp.1978), which outlines the jurisdiction and powers of U.S. Magistrates, as support for their argument. H.R.No.94–1609, 94th Cong., 1st Sess., *reprinted in* [1976] U.S.Code Cong. & Admin. News, p. 6162. We are unable to draw the same conclusion from the legislative history as appellants.

419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974).

Later cases have also confirmed that the district court must first review the proceedings of a civil trial conducted by a magistrate before it can enter final judgment. *See, e. g., Kendall v. Davis,* 569 F.2d 1330 (5th Cir. 1978). But no court has limited the right of a magistrate, with the consent of the parties, to try a civil matter and make an initial decision upon which the district court, after review, may enter final judgment. The fact that this action is based upon diversity jurisdiction and was tried before a jury is immaterial.

Here, a district judge reviewed the transcript of the trial to determine the effect of references to workmen's compensation and concluded that no error occurred. We agree. Under these circumstances, use of a Magistrate to hear the case was proper.

C. *Harbor's Application for Attorney's Fees.*

■ After the granting of its motion for summary judgment on Olympic's third party complaints, Harbor filed a motion for attorney's fees, costs, and disbursements based on the indemnity provision in the contract between the parties. Because we sustain the jury verdict, Olympic's appeal from the granting of summary judgment is moot. Harbor's appeal from the denial of attorney's fees, however, is still at issue.

Olympic's action against Harbor did not "aris[e] out of, in connection with or incident to" its performance of the subcontract with Harbor, as required by the indemnity provision, because Harbor's own negligence caused the accident after Olympic had fulfilled all of its contractual obligations. In addition, Harbor's notice of appeal was not timely filed.

The denials of Small and Abbott's motions for a mistrial and a new trial and Harbor's motion for attorney's fees and costs are

AFFIRMED.